Filed Feb. 10, 1886.

---

No. 12,627.

## PRESSLEY v. LAMB.

RECEIVER.—*Jurisdiction.*—*Judge in Vacation.*—Under the provisions of section 1222, R. S. 1881, a judge in vacation is clothed with the same power and authority relative to the appointment of receivers, as is the court itself when in regular and open session, and his acts, orders and proceedings in such premises are the judicial proceedings of the court whereof he is judge.

SAME.—*Voluntary Appearance of Defendant.*—Where a complaint is filed by one partner, before a judge in vacation, asking the appointment of a receiver, and the defendant, a co-partner, voluntarily appears to such action and files his answer, without process, and submits the same, such judge thereby acquires full and complete jurisdiction both of the subject-matter of the action and the persons of the parties, such voluntary appearance being equivalent to the service of process.

SAME.—*Collateral Attack.*—The regularity or legality of the appointment of a receiver by a judge in vacation, who has acquired jurisdiction of the subject-matter of the action and the parties thereto, can not be questioned collaterally in a subsequent action.

SAME.—*Appeal to Supreme Court.*—Whenever the court or judge, either in term time or vacation, appoints or refuses to appoint a receiver, the party aggrieved may, under the provisions of section 1231, R. S. 1881,

within ten days thereafter, appeal from the decision of such court or judge without awaiting the final determination of the case.
MITCHELL, J., dissents.

From the Marion Superior Court.

*F. Winter,* for appellant.

*R. Hill, B. Harrison, W. H. H. Miller* and *J. B. Elam,* for appellee.

HOWK, J.—This cause is now here for the second time. The opinion and decision of the court, when the case was first here, are reported under the title of *Pressley* v. *Harrison,* 102 Ind. 14. After the cause was remanded, in obedience to the mandate of this court, the superior court at special term overruled the defendants' demurrers to appellant's complaint theretofore filed. Thereafter the appellant, Pressley, filed a second paragraph of complaint. To the entire complaint the appellee, Lamb, separately answered in two paragraphs; but the first paragraph, being the general denial, was subsequently withdrawn. Appellant demurred to the second paragraph of appellee's answer, upon the ground that it did not state facts sufficient to constitute a defence to his, appellant's, action. This demurrer was overruled by the court at special term, and appellant at the time excepted, and failing and refusing to reply or plead further, the court adjudged that he take nothing by his suit, and that appellee, Lamb, recover his costs herein. Upon appeal this judgment of the court at special term was affirmed by the general term, and from the judgment of the general term appellant, Pressley, now here prosecutes this appeal.

By a proper assignment of error here he has brought before this court the errors assigned by him in general term. By these errors he calls in question the sufficiency of the facts stated in the second paragraph of appellee's answer to constitute a defence to his, appellant's, action, and the decision of the court at special term in overruling his demurrer to such second paragraph of answer.

It does not appear from the record before us, that appel-

lant's original complaint, or what may now be called the first paragraph of his complaint, has been amended or materially changed since this cause was here before. The important facts stated in such original complaint are given in the opinion of the court in *Pressley* v. *Harrison, supra,* and need not be repeated here.

In the second paragraph of his complaint the appellant has fully and accurately stated his cause of action, and, before considering the errors of which he complains, it is proper, we think, that we should give the substance of such second paragraph. Appellant alleged in such second paragraph of complaint, that on the 25th day of August, 1884, he recovered a judgment in the Marion Circuit Court, of this State, against the defendants, Alfred and John C. S. Harrison, for $9,929.02, and costs taxed at —— dollars, and thereafter, on the same day, caused an execution to be issued on such judgment to the sheriff of Marion county, which execution was then in the hands of such sheriff, wholly unsatisfied; that at the time such judgment was so rendered and such execution issued, and theretofore, on July 18th, 1884, such. judgment defendants were the owners of a large amount of personal property, in excess of the amount exempt from execution, consisting of money, office and bank furniture, fire and burglar-proof safes, farming utensils and machinery, hay and other agricultural products, bills, notes, accounts and other choses in action and credits, and other personal property, the character of which was unknown to appellant, and also of a number of lots and parcels of real estate, particularly described, in Marion county, Indiana; that the defendants, Alfred and John C. S. Harrison, on and before the 18th day of July, 1885, were partners in the banking business, under the firm name of "A. & J. C. S. Harrison," and, in that character, had contracted and owed the debt to appellant, for which such judgment was recovered, and were the owners of all the property, real and personal, thereinbefore described, the same being partnership assets, except the

parcel of real estate, No. 24, the individual property of defendant Alfred Harrison, and except also parcels numbered 25 and 26, which were the individual property of defendant John C. S. Harrison.

. Appellant further alleged that on the 18th day of July, 1884, defendants Alfred and John C. S. Harrison suspended payment in their said banking business, and became and were insolvent, as such partners and as individuals ; and being so insolvent, but there being no controversy as between themselves, they agreed between themselves to place all their partnership assets and property, and all their individual property and assets subject to execution, in the hands of a receiver to be appointed by one of the judges of the superior court of Marion county, wherein they both resided, to be administered by such superior court by and through such receiver, and distributed to their creditors under the orders of such court, and thereby to prevent any of their creditors from taking any of such property on execution for the satisfaction of their debts ; and to that end they further agreed that a proceeding, in the form of an ordinary civil action, should be forthwith commenced in such superior court, to which Alfred Harrison should be made an ostensible plaintiff, and John C. S. Harrison an ostensible defendant, and which proceeding, while adversary in form, should in fact be of a friendly and agreed character, and should be prosecuted without any opposition thereto being made by the ostensible defendant, John C. S. Harrison, but, on the contrary, with his active assistance, so that, without any delay, the appointment of a receiver should be procured, in whose hands all the property, partnership and individual, of Alfred and John C. S. Harrison should be placed, and thereby their creditors prevented from taking the same in execution for the satisfaction of their debts.

And appellant averred that in execution of such agreement, defendant John C. S. Harrison personally employed attorneys to commence such proceeding in the name of Alfred Harrison as plaintiff, and against himself as defendant, and

such attorneys thereupon, under the instructions and direc-
tions of John C. S. Harrison, and in the absence of Alfred
Harrison, prepared and filed in the office of the clerk of the
Marion Superior Court, on the 18th day of July, 1884, a
complaint against John C. S. Harrison, as defendant, in the
name of Alfred Harrison, as plaintiff, as follows:

"The plaintiff complains of the defendant and says, that
plaintiff and defendant are partners doing business as bank-
ers, at Indianapolis, Indiana, under the firm name of 'A. &
J. C. S. Harrison,' and have been, as such partners, doing
such business for twenty years last past; that 'a run' has
been going on, by their depositors, against their said bank for
several days last past, whereby their cash resources have been
so much reduced that they are unable longer to continue said
banking business, and said firm is therefore insolvent; that,
in order to prevent a multiplicity of suits and thereby cause
great expense in litigation, and in order to save said estate
for their creditors, it is important that a receiver be now ap-
pointed for said firm to take possession and control of the
assets of such firm, and administer the same under the order
of the court; that a dissolution of such partnership be had,
and an accounting between the partners.   Wherefore," etc.

This complaint was signed by the attorneys of the plaintiff
therein; and such attorneys, appellant alleged, at the same
time and by the procurement of John C. S. Harrison, in
further execution of the agreement between him and Alfred
Harrison, prepared the answer to such complaint of John C.
S. Harrison, signed by him in person, wherein he, "the de-
fendant in this cause, admits the allegations of the complaint
herein to be true;" that such answer was filed by John C.
S. Harrison in the clerk's office of such superior court, at the
time the complaint of Alfred Harrison was filed as aforesaid;
and when such complaint and answer were so filed, and at all
times thereafter until the first Monday of September, 1884,
the superior court of Marion county was in vacation; that
no summons or other process, or publication, was ever issued

or made on such complaint of Alfred Harrison, or served on John C. S. Harrison, nor did he ever endorse on any summons, or other process, an acknowledgment of service in such pretended action; that immediately upon such complaint and answer being so filed, on the 18th day of July, 1884, they were, in further execution of such agreement, presented by the attorneys by whom they had been prepared, and by John C. S. Harrison in person (Alfred Harrison not being personally present, nor represented otherwise than as he was represented by the attorneys, who prepared such complaint and answer by the procurement of John C. S. Harrison), to the Honorable Lewis C. Walker, one of the judges of such superior court, who thereupon made an order placing all the partnership assets of Alfred and John C. S. Harrison in the custody of the sheriff of Marion county, and continued the appointment of a receiver, under advisement, until the next day, the 19th day of July, 1884, on which day, in further execution of their aforesaid agreement, there was filed in the clerk's office of such superior court, and presented to Judge Walker of such court, in vacation, a supplemental complaint in the name of Alfred Harrison as plaintiff, against John C. S. Harrison as defendant, prepared by the aforesaid attorneys by the procurement of John C. S. Harrison, wherein Alfred Harrison alleged that the partnership assets of A. & J. C. S. Harrison were not sufficient to pay the liabilities of such firm; that he was the individual owner of property, real and personal, which he then surrendered, saving only the amount lawfully exempt from execution, and asked the court to take possession thereof by its receiver and apply the same to the payment of the debts of such partnership, and that he was informed and believed that John C. S. Harrison was willing to surrender his individual property for the payment of the debts of such partnership, and he asked that the court direct such receiver to take possession of the individual property of John C. S. Harrison, for the payment of the debts of such partnership, and that such "supplement and amendment be

taken and treated as part of his original complaint filed herein;" and, on the day last named, John C. S. Harrison in person presented to Judge Lewis C. Walker his answer to such supplement and amendment, in which answer he admitted the allegations of the supplemental complaint of Alfred Harrison, and consented to the surrender of all his individual property, in the manner and for the purposes mentioned in such complaint.

And the appellant averred that no summons or other process or publication was ever issued or made on such pretended supplemental complaint, nor served on John C. S. Harrison, nor was service thereof acknowledged by him, but, after such papers were filed in the clerk's office as aforesaid, they were presented to Judge Lewis C. Walker by such attorneys and by John C. S. Harrison in person (Alfred Harrison not being present in person, nor represented otherwise than as the aforesaid attorneys, who prepared such papers by the procurement of John C. S. Harrison, assumed to represent him), and thereupon Judge Walker on such day, in vacation, without any other or different proceedings or action being had or taken in such matter, than as thereinbefore stated, and acting solely upon such pretended complaint and supplemental complaint and answers thereto, and upon the personal consent and agreement of John C. S. Harrison thereto, and at his instance and procurement, as well as that of Alfred Harrison, as thereinbefore shown, made an order appointing appellee, Robert N. Lamb, receiver of all the assets, partnership and individual, of Alfred and John C. S. Harrison, and directed that, upon his executing bond and taking oath as such receiver, he should immediately take into his exclusive possession and control, and hold and dispose of, under the orders of the court to be thereafter made, all of said partnership and individual property; that appellee Lamb thereupon gave bond and took the oath required of him by such order, to the approval of such judge, and at once, as such

receiver, took possession of all the partnership and individual assets of Alfred and John C. S. Harrison, and had since retained possession thereof as such receiver, and claimed that his possession was rightful, and that he was entitled to hold and dispose of such property in such manner as the court should direct, in proceedings to be had in such pretended action; and that appellee Lamb, as such receiver, asserted further that the appellant had not, by virtue of his aforesaid judgment and execution against the defendants, Alfred and John C. S. Harrison, acquired any lien upon any of such property so owned by the Harrisons and then in the possession of such receiver, or any right to enforce his judgment by levy upon and sale of any of such property on execution.

Appellant further averred that, on the 19th day of July, 1884, the defendants Alfred and John C. S. Harrison, each for himself as an individual, executed a deed of assignment of all his individual real and personal property to appellee Lamb, under the voluntary assignment law of this State for the benefit of creditors, and such deed was, on the same day, recorded in the recorder's office of Marion county; that appellee Lamb held possession of such property by no other or different authority or right than thereinbefore stated; that Alfred and John C. S. Harrison had not, nor had either of them, any property out of which appellant could procure satisfaction of his judgment, or any part thereof, other than such as was then in the possession of appellee Lamb; and that, by reason thereof, appellant was without remedy for the collection of his judgment, unless the court would decree that the appointment of appellee Lamb as receiver, so made in vacation and by the consent and agreement of defendants, Alfred and John C. S. Harrison, was without jurisdiction, and fraudulent and void, and vested in appellee Lamb no right to the possession of such property, or any part thereof, as against appellant's judgment and execution, and his rights thereunder.    Wherefore, etc.

We have given a fuller summary of the facts alleged in

the second paragraph of the appellant's complaint than we otherwise would have done, for the purpose of demonstrating that the case stated therein, although manifestly relating to and founded upon the same facts and circumstances as the first paragraph, is not the same case which was presented to and considered by this court on the former appeal in *Pressley* v. *Harrison, supra.* So wide and so material is the difference between these two paragraphs of appellant's complaint, as it seems to us, that if issue were joined on either one of such paragraphs, and such issue heard by the chancellor upon the facts stated in the other paragraph as the only evidence in the cause, there could be neither finding nor decree in appellant's favor upon such issue.   We have said thus much upon this point, for the purpose of showing that as the case is now presented here, upon the second paragraph of appellant's complaint and appellee's answer, the opinion of this court on the former appeal can not be regarded, in any proper sense, as the " law of the case."   *Dodge* v. *Gaylord*, 53 Ind. 365 ; *Kress* v. *State, ex rel.,* 65 Ind. 106 ; *Board, etc.,* v. *Indianapolis, etc., R. W. Co.,* 89 Ind. 101; *Rinard* v. *West,* 92 Ind. 359 ; *Davis* v. *Krug,* 95 Ind. 1.

The substance of the first paragraph of appellant's complaint is given in our opinion on the former appeal (102 Ind. 14), and, as we have heretofore said, need not be repeated. We may say, however, that the fundamental and controlling question in the minds of the court, presented in and by such paragraph, then the only complaint, and decided by this court, is wholly eliminated and withdrawn from the second paragraph of complaint now under consideration.   The question thus presented and decided is stated in the syllabus of our opinion on the former appeal as follows:  " The filing and delivery to the judge by the plaintiff of papers purporting to be signed by the defendant can not constitute an appearance by the defendant to the action or to the plaintiff's motion for a receiver."   That is, briefly stated, the plaintiff in a suit can not appear for the defendant therein, and by filing and

delivering to the judge what purports to be, or is in fact, the defendant's answer, give the judge jurisdiction of the person of the defendant. This question, as we have said, is eliminated and withdrawn from appellant's case, as the same is stated in the second paragraph of his complaint. Not only so, but, in such second paragraph, appellant alleged the facts to be that in the suit of Alfred Harrison against John C. S. Harrison, instituted in the Marion Superior Court, wherein the plaintiff made application to Judge Lewis C. Walker, one of the judges of such court, in vacation, for the appointment of a receiver, he appeared and was represented by reputable practicing attorneys of that court and of this court, and that the defendant, John C. S. Harrison, made full appearance *in propria persona,* as he had the right to do, in and to such suit and application. True, appellant has alleged in the second paragraph of complaint that the defendant employed attorneys for the plaintiff in such suit and application; but it is clear, we think, that the authority of the attorneys who appeared for the plaintiff, no matter by whom or how employed, can not be called in question in this collateral suit. Indeed, the authority and right of such attorneys to appear for the plaintiff, in such suit or application, as it seems to us, could not have been directly questioned therein, except, as provided in section 970, R. S. 1881. This not having been done, the authority of such attorneys to appear for such plaintiff must be presumed, and can not be controverted in any collateral suit or proceeding, either below or in this court. *Indiana, etc., R. W. Co.* v. *Maddy,* 103 Ind. 200.

We have given the substance of the second paragraph of appellant's complaint for another reason. So far as the naked facts of this case are concerned, without any coloring or qualification on either side by adjectives or epithets, there is no substantial difference between the averments of appellee's answer and the allegations of the second paragraph of appellant's complaint, so far as the latter goes. There are some facts stated in the answer, however, and admitted by appel-

lant to be true, as the case is here presented, which are not to be found in either paragraph of the complaint. These facts were manifestly pleaded by the appellee for the purpose of informing the mind and enlightening the conscience of the chancellor in relation to the present status and surroundings of appellee's receivership. So that, even if there were irregularities, informalities, or, possibly, illegalities, which were not fundamental, in any of the proceedings in the suit wherein appellee was appointed receiver, a court of equity might not, in ignorance of the disastrous complications which would result therefrom, as alleged, revoke, annul or set aside his appointment as such receiver.

To that end, apparently, and in addition to the facts stated in the second paragraph of appellant's complaint, the appellee alleged, in substance, among other things, that for more than thirty years prior to the 18th day of July, 1884, Alfred Harrison and John C. S. Harrison had been engaged in the business of private bankers in the city of Indianapolis, carrying on and conducting a bank of discount and deposit, under the firm name of "A. & J. C. S. Harrison," and had acquired and held in their partnership name and business, for the use and benefit of their firm, a large amount of real estate, personal property, rights, credits and effects, of the value, to wit, of $100,000, and more; that, on the day last named, A. & J. C. S. Harrison had become and were largely indebted to divers persons, firms and corporations, in the sum, to wit, of $600,000, and had thereby become hopelessly insolvent; that, in consequence of their indebtedness and embarrassment, they had become and were unable to continue their banking business, as they each well knew, and it became apparent to each of them that, unless steps were immediately taken to place their assets and effects under the control of a competent court, the same would be wasted and lost to a great extent in costs and expenses of litigation, by means whereof only a few of their creditors would receive any part of their claims or debts.

Appellee then stated in his answer the institution of the suit of *Alfred Harrison* v. *John C. S. Harrison*, in the Marion Superior Court, on the 18th day of July, 1884, in the vacation of such court, the plaintiff's application therein to Judge Lewis C. Walker, one of the judges of such court, sitting in chambers on the day named and the next day, in vacation, for the appointment of a receiver, the full appearance of both parties on both days before Judge Walker, in his chambers, in such suit and application, the plaintiff by his attorneys therein, and the defendant appearing in his own proper person and acting for himself therein, the proceedings then and there had, and the orders then and there made, by and before Judge Walker, in such suit and application, and in the presence of both the parties thereto appearing as aforesaid, and the appointment of appellee as receiver, his acceptance of the trust and qualification therein, and his taking and holding the possession of the property and assets, partnership and individual, of the parties to such suit; all these facts are stated in the answer substantially as the same are stated in the second paragraph of the complaint, but without coloring or qualification of any kind.

Appellee then alleged in his answer, that he had been sued as such receiver, in the courts of this State and elsewhere, giving the particulars; that he had sold property and assets here and elsewhere, which had come to his hands as such receiver, and received the money therefor, giving the particulars; and that he had sold real estate belonging to the firm of A. & J. C. S. Harrison, and having received the purchase-money, had executed conveyances thereof under the order of the court. And appellee further said, that he had employed counsel to conduct litigation growing out of and connected with the administration of his trust; and that, in all his conduct of the business of such trust, he had acted in good faith and in the honest belief that his appointment, as such receiver, was legal and valid. And appellee averred the fact to be that, at the time the complaint of Alfred Harrison

against John C. S. Harrison was filed, there were large unsettled differences of account between them, as partners, rendering an accounting between them necessary in the closing of their business, as prayed in such complaint, and appellee denied that there was any other or different understanding or agreement between the parties to that suit as to the proceeding therein than was set forth in his answer; and he also denied that what was done in that suit, was done for any other purpose, or with any other intention, than was alleged in his answer. Wherefore, etc.

As we have already said, the sufficiency or, as appellant claims, the insufficiency of the facts stated in appellee's answer to constitute a defence to appellant's suit herein, is the only question we are required to consider and decide; and this question was presented to the court below in general term, and is properly presented here by the alleged error of the court at special term, in overruling the demurrer to such answer.

It is manifest, we think, that in the proceedings had, and the orders made, by and before Judge Walker, sitting in his chambers, in vacation, in the suit of *Alfred Harrison* v. *John C. S. Harrison*, for the appointment of a receiver for the insolvent banking firm of A. & J. C. S. Harrison, the learned judge and the parties to such suit acted, or intended to act, and believed they were acting, under and in conformity with the provisions of our civil code in relation to the appointment of receivers. In section 1222, R. S. 1881, in force since September 19th, 1881, it is provided as follows:

"A receiver may be appointed by the court, or the judge thereof in vacation, in the following cases:

"*First.* In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject any property or fund to his claim.

"*Second.* In actions between partners, or persons jointly interested in any property or fund.

"*Third.* In all actions, when it is shown that the property,

fund, or rents and profits in controversy is [are] in danger of being lost, removed, or materially injured.

"*Fourth.* In actions by a mortgagee for the foreclosure of a mortgage and the sale of the mortgaged property, when it appears that such property is in danger of being lost, removed, or materially injured; or when such property is not sufficient to discharge the mortgage debt,—to secure the application of the rents and profits accruing before a sale can be had.

"*Fifth.* When a corporation has been dissolved, or is insolvent, or is in imminent danger of insolvency, or has forfeited its corporate rights.

"*Sixth.* To protect or preserve, during the time allowed for redemption, any real estate or interest therein sold on execution or order of sale, and to secure to the person entitled thereto the rents and profits thereof.

"*Seventh.* And in such other cases as may be provided by law; or where, in the discretion of the court, or the judge thereof in vacation, it may be necessary to secure ample justice to the parties."

In the foregoing section, and in every section of the civil code in relation to receivers, it will be seen that the judge of the court in vacation is clothed with exactly the same power and authority, no greater and no less, as is the court itself when in regular and open session. In the vacation of his court the judge thereof has the power and authority to appoint receivers in any of the cases specified in section 1222, above quoted, or in any other case provided by law, or when, in his discretion, it may be necessary to secure ample justice to the parties, he may order property, which is the subject of litigation, to be deposited in court, or with the clerk thereof in vacation, or delivered to the party subject to his further order or that of the court; he may punish the disobedience of any such order as for contempt, and, in addition, may make an order requiring the sheriff to take the money or thing, and deliver it or deposit it in conformity with his direction

or that of the court; and under his control or that of the court, the receiver has power to bring and defend actions, to take and keep possession of the property, to receive rents, collect debts in his own name, and generally to do such acts respecting the property, as the court or the judge thereof may authorize.

When the judge of a court, in vacation, is engaged in doing these acts and making these orders, it is clear, we think, that he is exercising *quoad hoc* "the judicial power of the State," and that his acts, orders and proceedings in the premises, although had in vacation, are the judicial proceedings of the court whereof he is judge. In section 1, of article 7, of our State Constitution of 1851, as such section was amended March 14th, 1881, it is provided as follows : " The judicial power of the State shall be vested in a Supreme Court, in circuit courts, and in such other courts as the General Assembly may establish." Section 161, R. S. 1881.

In *Shoultz* v. *McPheeters*, 79 Ind. 373, after quoting this section of the Constitution, the court said : "All judicial powers are, by force of this provision, vested in the courts of the State. The Legislature has no authority to invest any other tribunals than the courts with judicial powers. It is certain that the Legislature can not exercise judicial powers. *Columbus, etc., R. W. Co.* v. *Board, etc.*, 65 Ind. 427 ; *Doe* v. *Douglass*, 8 Blackf. 10 ; *Young* v. *State Bank*, 4 Ind. 301. Nor can these powers be vested elsewhere than in the tribunals designated or indicated by the Constitution. Judicial powers can not be delegated." Accordingly, it was held in the case cited, that section 1404, R. S. 1881, wherein it was attempted to confer judicial power upon master commissioners in certain cases, was unconstitutional and void. So, also, in *Gregory* v. *State, ex rel.*, 94 Ind. 384 (48 Am. R. 162), it was held, in view of the constitutional provision above quoted, that judicial power can not be conferred by statute upon the clerks of courts.

It is true, however, that, in a legal sense, the judge of a court

is the court; certainly, there can be no court, under our laws, constitutional or statutory, without a judge. *Rogers* v. *Beauchamp*, 102 Ind. 33; *Shoultz* v. *McPheeters, supra.* So nearly akin are the two words "court" and "judge," in legal parlance, that, as they are used in the sections of the code now under consideration, they may well be regarded as synonyms, each of the other. *Michigan, etc., R. R. Co.* v. *Northern Ind. R. R. Co.*, 3 Ind. 239, on p. 245.

It is in this legal sense, we think, that the words "judge thereof in vacation," so often mentioned in the sections of the code before referred to, relating to receivers, should be taken and understood to mean "court in vacation." In other words, the phrase "the court, or the judge thereof in vacation," so often found in those sections, by supplying or filling a manifest ellipsis and the interchange of synonyms, may be made to read, in strict accordance with the legislative intent, and in perfect harmony with the constitutional provision above quoted, as follows: The court when in lawful session, or the court in vacation; or thus: The judge in term, regular, adjourned or special, or the judge in vacation. When Alfred Harrison, by his attorneys, filed his complaint against John C. S. Harrison, and appeared therewith before Judge Walker, and when the defendant therein filed his answer to such complaint, and, without process, appeared before and submitted his answer to Judge Walker, sitting in chambers, in vacation, in a cause or matter of which the court, whereof Judge Walker was judge, had jurisdiction, we are of opinion that the court, or judge in vacation, thereby acquired full and complete jurisdiction of the subject-matter of such suit, and of the persons of the parties, plaintiff and defendant. The defendant had the legal right to appear in person for himself, without the issue or service of process. His voluntary appearance in the suit was equivalent to service of process therein, and such suit was commenced from the time of such appearance. Sections 315 and 1230, R. S. 1881.

It must be borne in mind that the legislation of this State,

which confers precisely the same judicial power upon the judge of the court in vacation as upon the court in term, in relation to the appointment and control of receivers, and the management and disposition of the property in their hands, as heretofore stated, was first enacted by the General Assembly, and approved by the Governor on March 31st, 1879, and took effect and was in force on May 31st, 1879. This legislation was substantially re-enacted as a part of the civil code of 1881, and appears in the Revised Statutes of 1881, as sections 1222 to 1228 inclusive. In the same connection, and as a part of the civil code of 1881, the General Assembly enacted two new sections, of and concerning receivers, which are a revision of an act approved March 12th, 1875 (Acts 1875, Reg. Sess., p. 117), and are known as sections 1230 and 1231, R. S. 1881. It is provided in section 1230 as follows:

"Receivers shall not be appointed, either in term or vacation, in any case, until the adverse party shall have appeared, or shall have had reasonable notice of the application for such appointment, except upon sufficient cause shown by affidavit."

This section, it will be seen, provides for the voluntary appearance of the adverse party before the court or judge, either in term or vacation, or else that such party must have had reasonable notice of the application to the judge or court, either in term or vacation. But to what end shall the adverse party appear, or shall he be given reasonable notice of the application, if not to confer jurisdiction of his person upon the court or judge, either in term or vacation? Fairly construed, this section so strongly implies, as to strongly affirm, that receivers may be appointed by the judge or court, either in term or vacation, in any proper case, when the adverse party voluntarily appears before either the court or judge, or has had reasonable notice of the application, either in term or in vacation. If the adverse party voluntarily appear, or if, upon reasonable notice, he either appear or make default before the judge or court, either in term or

vacation, in an equitable suit or application for the appoint-
ment of a receiver, and the proper orders are then and there
made by the court or judge, either upon a hearing had or
upon his default, for the appointment of a receiver and for
the management and disposition of the property *in custodia
legis,* can such party afterwards be heard to claim collaterally,
or even upon a direct appeal, that all such proceedings by
court or judge, either in term or vacation, are absolutely null
and void, either because the plaintiff's complaint or applica-
tion did not state a cause of action or show an adversary
proceeding? Or because no summons was issued or served
on such complaint or application, and hence there was no ac-
tion pending? Or because the adverse party, in such com-
plaint or application, voluntarily appeared and filed his an-
swer thereto before the judge in vacation, when, as claimed,
there was no statute authorizing such voluntary appearance
before the judge in vacation, or making such appearance
equivalent to the service of a summons issued on such com-
plaint or application, and to. the commencement of a suit in
equity at and from the time of such appearance?

In the light of section 1230, above quoted, we are of opin-
ion that these questions, each and all, must be answered in
the negative. As already stated, it must be held that the
voluntary appearance of John C. S. Harrison to the com-
plaint of Alfred Harrison against him, before Judge Walker
in vacation, in a suit whereof the judge in vacation has the
same judicial cognizance, and as to which he is by law clothed
with the same judicial power of the State, as the court in
term of which he is judge, is equivalent to the issue and ser-
vice of process therein; and the suit must be deemed to have
been commenced at and from the time of such appearance.

In section 1231, *supra,* it is provided as follows: "In all
cases hereafter commenced or now pending in any of the
courts of this State, in which a receiver may be appointed or
refused, the party aggrieved may, within ten days thereafter,

appeal from the decision of the court to the Supreme Court, without awaiting the final determination of such case," etc.

It will be observed that this section of the civil code makes no provision, in express terms, for any appeal from the orders of the judge in vacation, either appointing or refusing to appoint a receiver. Yet it can not be doubted, as it seems to us, that in the enactment of this section of the code, the General Assembly intended to and did provide that whenever the court or judge, either in term or vacation, in any case thereafter commenced or then pending, might appoint or refuse to appoint a receiver, the party aggrieved might, within ten days thereafter, appeal from the decision of the court or judge, either in term or vacation, without awaiting the final determination of the case. This is the construction given this section of the code in *Barnes* v. *Jones*, 91 Ind. 161, which was an appeal from the appointment of a receiver by the judge, in vacation, where, as in the case of *Alfred Harrison* v. *John C. S. Harrison,* the relief sought was the dissolution of a partnership and the appointment of a receiver, and the order of the judge was affirmed by this court. This section of the code and the construction we have placed upon it give strong support, we think, to our opinion already expressed, that the .words " court" and " judge," as they are used in the sections of the code providing for the appointment of receivers, and for the management and disposition of property in their hands, may well be regarded as synonyms, each of the other.

Whether the complaint of Alfred Harrison, or the answer of John C. S. Harrison, be good or bad, or whether the court, or judge in vacation, committed error in any of the acts, orders or proceedings, had or done upon such complaint and answer, are questions we are not required to consider and decide in the case in hand. Such acts, orders or proceedings, even though they might be found to be erroneous, were certainly not void, because, as we have seen, the court or judge in vacation had jurisdiction of the subject-matter and of the

persons of the parties.    Appellant's suit is a collateral attack on such acts, orders and proceedings of the court or judge in vacation in the appointment of the appellee as receiver, and can not be maintained.    This point was so decided by this court in *Cook* v. *Citizens Nat'l Bank*, 73 Ind. 256.  The court there said : " Whether the action of the court in appointing a receiver was according to law, we need not decide.  If the appointment was erroneous, it was not void, and can not, in a collateral proceeding, be assailed, even by the parties thereto; and certainly not by strangers in the attitude of the appellant."  Kerr Receivers, p. 166 ; *Storm* v. *Ermantrout,* 89 Ind. 214.

It was claimed in argument by appellant's counsel that the suit and proceedings before Judge Walker, in vacation, which resulted in appellee's appointment as receiver, were in contravention of the terms of the statute providing for voluntary assignments by insolvent debtors of all their property, in trust for the benefit of all their creditors.    This claim is wholly untenable, as it seems to us, and can not be sustained. There is no substantial conflict between that statute and the provisions of the civil code, in relation to the appointment of receivers.    But if there were such conflict, it needs no argument to show that the statute in question must give place to the provisions of the code, as the later expression of the legislative will.    The voluntary assignment law took effect on March 5th, 1859, while the provisions of the civil code for the appointment of receivers, in certain cases, became a part of our law, on September 19th, 1881.    The statute and the provisions of the code referred to, we think, may well stand together as parts of our law.    While it is true that the firm of A. & J. C. S. Harrison might, not under the letter of the statute, but under its provisions as construed by this court, have made a voluntary assignment in trust for their creditors, yet, it must be held that this fact would not preclude either member of the firm from resorting to a court of equity for the appointment of a receiver.    Under either procedure, the

end to be accomplished is precisely the same, namely, the equal distribution of the property and assets of the firm among its creditors.

The Marion Superior Court is a court of general jurisdiction, and, as such, is clothed with the judicial power of the State. Its proceedings, whether in term or vacation, are judicial proceedings, and can not be collaterally attacked. We conclude, therefore, in the case at bar, that appellee's answer is a complete defence to appellant's cause of action, and that the demurrer to such answer was correctly overruled.

We find no error in the record of which appellant can complain.

The judgment is affirmed, with costs.

MITCHELL, J., dissents, and will file a dissenting opinion.

ELLIOTT, J., took no part in the decision of this cause.

Filed Jan. 29, 1886.

### DISSENTING OPINION.

MITCHELL, J.—Unable to concur with the majority, the following are some of the reasons upon which my dissent is based:

That an action must be pending before either a court in term or a judge in vacation can acquire jurisdiction to appoint a receiver, unless in exceptional cases expressly provided for by statute, has, I think, never been the subject of judicial controversy. Upon this the authorities are everywhere in accord. *Dale* v. *Kent*, 58 Ind. 584; *Brinkman* v. *Ritzinger*, 82 Ind. 358; *Pressley* v. *Harrison*, 102 Ind. 14; *Merchants', etc., Bank* v. *Kent*, 43 Mich. 292; *Hardy* v. *McClellan*, 53 Miss. 507.

The remedy is merely an auxiliary to, and an incident of, a pending suit. *Hottenstein* v. *Conrad*, 9 Kan. 435; *Chicago, etc., Mining Co.* v. *U. S. Petroleum Co.*, 57 Pa. St. 83; *Bufkin* v. *Boyce*, 104 Ind. 53.

A receiver is only resorted to in any case to preserve property *in statu quo*, pending a contest. The case pending must

be a suit in equity, involving the property in controversy. *Schlecht's Appeal,* 60 Pa. St. 172; *Emerson & Wall's Appeal,* 95 Pa. St. 258; *Cincinnati, etc., R. R. Co.* v. *Sloan,* 31 Ohio St. 1.

The statute applicable in that respect provides that " receivers may be appointed by the court or judge thereof * * * *in actions* between parties, or persons jointly interested in any property or fund."

As requisite to the pendency of an action in which a receiver may be appointed, it is essential that a written complaint or petition exhibiting something in the nature of a controversy or cause of action of equitable cognizance shall have been filed.

This is required by the statute, as well as by the course of judicial procedure recognized everywhere, to the end that a subject-matter shall be brought within the jurisdiction of the court.   Two things are indispensable before the intervention of any court can be invoked to pronounce judgment *inter partes:* 1. A controversy of some kind between parties involving legal or equitable rights. 2. That the matter in controversy shall be presented in such manner that the court may act judicially in the premises.   Without these, a court can not proceed to give judgment, even with the consent of the parties.   These being absent, nothing is pending before the court.

In *Morrow* v. *Weed,* 4 Iowa, 77, it was said : " If there be a petition, or the proper matter of that nature, to call into action the power or jurisdiction of the court, the sufficiency of it can not be called in question collaterally." *City of Terre Haute* v. *Beach,* 96 Ind. 143.

Admitting to the fullest extent that where a receiver has been appointed in a pending action, the sufficiency of the complaint in that action can not be drawn in question collaterally, the difficulty in this case still remains, that in the proceeding in which the receiver was appointed, it affirmatively appears

that no complaint at all, nothing in the nature of a complaint, was filed.

While it is not necessary, for the protection of a purchaser from a receiver, that the proceedings and appointment should appear to be regular, the rule is that three things are essential: 1. He must see that a suit in equity was pending in which a receiver was appointed. 2. That the receiver was authorized by the court to sell the property in controversy. 3. That a sale was actually made under such authority. *Koontz* v. *Northern Bank*, 16 Wall. 196.

If there was no suit in equity, *inter partes*, when the receiver was appointed, the appointment was a nullity and would be disregarded whenever it came in question, unless by acquiescence an estoppel intervened. *People* v. *Judge*, 31 Mich. 456.

It is settled that a judgment in a case requiring adversary proceedings is void whenever it appears on its face, or may be shown by evidence, to have been rendered without jurisdiction of a subject-matter. *Horner* v. *Doe*, 1 Ind. 130; *McCormack* v. *First Nat'l Bank*, 53 Ind. 466.

To my mind, the complaint which is set out in the opinion of the court exhibits nothing in the nature of a controversy of any kind between the partners. It states no facts tendering any kind of an issue or upon which a judgment of any kind could have been pronounced. Nothing is complained of, except that the depositors of the bank have demanded their money with such persistency that the bank has become insolvent. It informed the court that in order to prevent a multiplicity of lawsuits and secure an equal distribution among creditors, it was important that the court should take control of the business of the firm by appointing a receiver. No disagreement between the partners appearing, or other reason why the end desired could not be accomplished by resorting to the statutory method, the intervention of a court was neither necessary nor proper to accomplish a vol-

untary assignment, which was all that was asked for by this so-called complaint. High Receivers, section 10.

If any doubt had remained as to the purpose of this so-called complaint, it must have been dissipated when the supplemental complaint was filed. In this it was averred that the partners were possessed of a large amount of individual real and personal property which they were willing to surrender for the benefit of their creditors, and which the court was asked to take control of. The whole proceeding was, without any disguise whatever, an appeal to a judge in vacation to take the individual and firm property of the Harrisons under the shelter of the court.

To my mind, it was of no more legal force than if they had made the same appeal to any other individual. See *Shoemaker* v. *Smith,* 74 Ind. 71. As was said in *Sage* v. *Memphis, etc., R. R. Co.,* 18 Fed. Rep. 571: "It is also apparent that this is not an adversary proceeding, but one in which the parties complainant and defendant have acted in concert."

I do not understand that a court of equity can acquire jurisdiction to take upon itself the administration of the affairs of a bank or the distribution of the private estates of bankers, on request, simply because the bank has become unprofitable or insolvent and a source of annoyance to its owners.

The rule was forcibly stated in *Overton* v. *Memphis, etc., R. R. Co.,* 10 Fed. Rep. 866, thus: "It is not the province of a court of equity to take possession of the property, and conduct the business of corporations or individuals, except where the exercise of such extraordinary jurisdiction is indispensably necessary to save or protect some clear right of a suitor, which would otherwise be lost or greatly endangered, and which can not be saved or protected by any other action or mode of proceeding."

To characterize a paper like that set out as a complaint, or bill in equity, is to disregard the substance and grasp at that which is less substantial than a shadow. Either it must be conceded that a receiver may be appointed upon request of

one partner, without the existence of any controversy or disagreement whatever between the partners, upon the mere showing of insolvency, or it must follow, as it seems to me, that there was lacking in this case the first essential element of a suit, *i. e.*, the statement in writing of something in the nature of a complaint. R. S. 1881, section 338.

If, however, it be conceded that there was a sufficient complaint to call into action the jurisdiction of the court over a subject-matter, it was nevertheless necessary to the pendency of an action that process should have been issued, or that the defendant should have appeared in some manner known to the law, so as to give the court jurisdiction of his person.

It has heretofore been well settled in this State that a court can acquire jurisdiction of the person of a defendant in no other way than through its process or by a voluntary appearance in the case entered of record in open court in term time.

That no summons was issued is conceded, and that no other appearance by the defendant was made in the case except to go before the judge at chambers and present his written consent that a receiver might be appointed, is also admitted. In the prevailing opinion this is held to have been such an appearance in court to the case as constituted it an action pending at the time the receiver was appointed.

The scope and effect of the holding is that a judge sitting in vacation, exercising special statutory powers, such as are involved in the appointment of a receiver, etc., becomes the court of which he is the judge, and that such proceedings before him are proceedings in such court; that an appearance before a judge so sitting is such an appearance in court as confers original jurisdiction over the person of the defendant, and without any other process or appearance makes the matter upon which the judge acts a case pending in court. It seems to be implied, too, that to the proceedings of a judge so acting all the presumptions which attach to the proceedings of courts of general jurisdiction will be indulged when they are drawn in question collaterally. With deference to the

opinion of the court, this view seems to me untenable in the nature of things, and entirely unsupported by authority. In my opinion, both reason and authority support the view that a judge so sitting constitutes a special tribunal of limited statutory power, and, like all special tribunals, no presumptions are indulged in favor of his jurisdiction; that facts or conditions necessary to confer jurisdiction must affirmatively appear; that he does not constitute the court of which he is the judge, and that his proceedings are no part of the proceedings of the court, and do not become part of its record. His sitting in vacation is confined to no time or place; the law provides for no record of his proceedings, and he can keep none, and, as a consequence, anything which in the course of judicial procedure is required to be proved by the record, such as an appearance of a party in court, a ruling or decision upon any question of law, can not occur before him.

The extent to which any court has gone in respect of upholding the jurisdiction of a court under like circumstances, so far as I can discover, is, to hold that where it appears in an order appointing a receiver, by the recitals in the order, that an action was pending, such recital constituted *prima facie* evidence of the pendency of the action. Such recitals are not conclusive, and may be contradicted. *Potter* v. *Merchants' Bank*, 28 N. Y. 641.

It is the rule in the Federal court, and many of the States, that where a court of general jurisdiction exercises a special statutory power, which was not according to the course of the common law, its jurisdiction, both as to the subject-matter and the person, must affirmatively appear, and everything will be presumed to be without its jurisdiction which is not affirmatively shown to be within it. *Galpin* v. *Page*, 18 Wall. 350.

The argument on which the prevailing opinion rests is, that the appointment of a receiver is the exercise of a judicial function, and that as under the Constitution judicial power can only be conferred upon courts, a judge while ap-

pointing a receiver is exercising judicial power, and is, therefore, the court of which he is the judge.

It is difficult to see in what respect the exertion of judicial power is involved, where, as in this case, the sole purpose of the appointment of a receiver appears to be to effect an assignment for the benefit of creditors. In my opinion it might as well be said that such an assignment was a judicial act, and could only be made by the intervention of a court. That the power to pronounce a judgment which determines or finally adjudicates upon the rights of persons or the title to property is a judicial function which can only be conferred upon courts, is well settled. There are, however, many orders made in cases pending and many proceedings had in matters temporarily affecting property, the making of which are not regarded as the exercise of judicial functions. Thus in the case of *Carey* v. *Giles*, 9 Ga. 253, the question was directly made whether the appointment of a receiver was the exercise of judicial power. LUMPKIN, J., delivering the judgment of the court, said: "Was the appointment of a receiver a judicial act? If so, it is very clear that it could not be made by the Legislature, without violating an express provision of the Constitution. But it does not seem to us to be of this description of power. It was not a case of controversy between party and party; nor is there any decree or judgment affecting the title to property; it determines no right, legal or equitable. The receiver is merely to collect, hold and disburse the assets of the bank for the benefit of all concerned; and it is in the power of the courts to direct and control him in the proper execution of his duties." So, also, in an analogous case, *Foote* v. *Forbes*, 25 Kan. 359, it was held that orders made by a judge at chambers, in granting and dissolving a temporary restraining order, were not judicial acts. The court there said: "It is not an adjudication that can affect anything further than the granting or dissolving of the injunction; and except for the granting or dissolving of the injunction, it is no adjudication at all." See, also, *Toledo,*

*etc., R. W. Co.* v. *Dunlap*, 47 Mich. 456; *United States* v. *Ferreira*, 13 How. 40.

Under an act of Congress the comptroller is authorized to appoint receivers in certain cases, and his authority in that regard has often been maintained in the courts.

To the foregoing might be added many other cases of like import, but as I should not feel inclined, without further consideration, to go to the extent of holding that the appointment of a receiver or granting an injunction under our statute was not in such sense a judicial act as that the power to make such appointments could only be conferred upon a judicial officer, who while exercising such power, constituted a special tribunal or court in a limited sense, I pursue the inquiry no further. That *quasi* judicial powers may be conferred upon tribunals which are not courts, in the strict sense of the term, there can be no doubt. *Shoultz* v. *McPheeters*, 79 Ind. 373; *United States* v. *Ferreira, supra.* Such are the powers which are conferred by statute upon a judge in vacation, and such a court is constituted when a judge acts in obedience to the powers thus conferred.

The power of a judge in vacation was the subject of judicial consideration at a very early period in the history of this court, and his power and jurisdiction, and the relation which he occupied to the court of which he was the judge, were defined in a manner consistent with the whole course of legislation and judicial interpretation since. *Newman* v. *Hammond*, 46 Ind. 119; *Ferger* v. *Wesler*, 35 Ind. 53; *Batten* v. *State*, 80 Ind. 394; *Cain* v. *Goda*, 84 Ind. 209.

In the case of *Taylor* v. *Moffatt*, 2 Blackf. 305, after defining the jurisdiction and power of a judge, sitting in term, the court said: "But when he is acting in vacation his situation is different: his jurisdiction is special and limited. He can not be strictly said to be acting as a court of chancery." So, again, in the case of *City of Columbus* v. *Hydraulic, etc., Co.*, 33 Ind. 435, in which it was held that the judge of the common pleas court had power to issue an injunction in a

Pressley v. Lamb.

case pending in the circuit court, it was said: "The judge of the common pleas is not in vacation the court of common pleas, and so of the circuit judge. But each exercises in vacation whatever power in this respect is conferred by statute as an officer clothed with the special authority, having for that purpose the power which the proper court would have in term, and being, in a certain limited sense, that court for the time being. * * * The judge in vacation is not the court, though for certain purposes he possesses its powers, and is for that reason called a *court*."

That a judical officer may be clothed with certain limited statutory powers of a judicial character, can not be questioned, and that in a certain limited sense he is, while exercising those powers, a court, may be admitted, but it does not follow that he thereby becomes the court of which he is the judge, or that he has any jurisdiction beyond the express letter of the statute. Upon this subject the Supreme Court of California said, in the case of *Spencer Creek Water Co.* v. *Vallejo*, 48 Cal. 70: "It is beyond question that the county judge is not the county court, and although the Legislature may authorize the judges of the several courts to perform certain duties, at chambers, in respect to proceedings in a cause, yet some court has jurisdiction of the cause, and the judge, in chambers, whether of the same or another court, acts as a commissioner, or in some other capacity, merely in aid of and subordinate to the court having jurisdiction of the cause."

In the case in which the appellee in this case was appointed receiver there was no action pending in court, in aid of whose jurisdiction the judge at chambers acted. The question is, could the judge, by taking jurisdiction over a defendant who came before him to consent to the appointment of a receiver, thereby constitute the case in which the receiver was appointed an action pending? Could he, by taking original jurisdiction over a defendant in a matter not pending in any court, acquire a jurisdiction which he could only exercise in a pending cause?

The only conclusion which in my opinion is justified upon authority and precedent, is that he could not. That a judge in vacation may be, and under the statute is, invested with special authority to make such orders in a case pending, in aid of the jurisdiction of the court in which the action is pending, is thoroughly settled; but that he is not and can not be made the medium through which original jurisdiction can be acquired in such a case, is equally well settled. A judge, sitting in vacation, is not a court of record; he has neither clerk, seal nor record. He has in vacation no more authority or control over, or right to enter anything upon the records of the court, unless expressly authorized by statute to do so, than any other citizen. That an appeal is provided for from orders made by a judge in vacation determines nothing as to the extent of his authority, nor does that fact constitute him a court. There are many proceedings had before inferior officers and municipal bodies from which an appeal may be taken to the circuit courts, but this does not constitute such officers or bodies courts.

Under section 7, Acts 1883, p. 180, an appeal may be taken from the action of a township trustee in a drainage case, but that fact does not constitute the trustee a court.

While sitting in vacation, a judge does not come within any known definition of a court as ordinarily understood. While holding court in one county, he may, upon proper application, make an order appointing a receiver, or grant an injunction, in a case pending in any other county in his circuit. This practice prevails uniformly, and has been upheld in this court. Thus it might often happen that one judge might at the same time have the circuit court of two counties open for appearances and proceedings, and in that manner constitute the circuit court in two counties during the same period.

A judge sitting a hundred miles from the county seat, without any record before him, might nevertheless take proceedings and enter the appearance of a defendant in a cause not yet commenced. It would thus result that the evidence

of an appearance in court, or of pleadings filed and rulings had in the circuit court, would rest in the memory of the judge, or be preserved in such temporary orders as might be made wherever the judge might chance to be found.

It was said in *Blair* v. *Reading*, 99 Ill. 600: "It is a fundamental principle that courts can exercise judicial functions only at such times and places as are fixed by law, and that the judges of courts can enter no orders in vacation except such as are expressly authorized by statute."

There is no statute or precedent which authorizes an appearance to be entered before a judge sitting in vacation, nor have we any statute which prescribes what acts shall constitute an appearance. What shall constitute an appearance, therefore, rests upon the well established rule of the common law, as it has been perpetuated and declared time out of mind. According to this rule, steadily maintained and often declared by this court, an appearance is the making of some formal entry, plea, motion, or official act in open court. It is essential that this should be of record; it can be proved only by the record. *Scott* v. *Hull*, 14 Ind. 136. Moreover, it has been repeatedly ruled by this court, that whenever the law contemplates the doing of an act by or in a court, " it is and must be understood that the court in term time may or must do it, and the judge in vacation can not, unless the power is expressly conferred upon him by law." *Newman* v. *Hammond*, 46 Ind. 119. *Ferger* v. *Wesler*, *supra*; *Batten* v. *State*, *supra*.

Thus it was said in *McCormack* v. *First Nat'l Bank*, 53 Ind. 466: "An appearance, according to the ancient practice, purports to be a proceeding in term time, and that theory still exists in legal contemplation." Unless, therefore, it can be held that a judge sitting in vacation is not only the court of which he is the judge, but that his sitting constitutes part of a term of court, an appearance can not be entered before him within any precedent that I have been able to find. The rule, forcibly and tersely announced in the language above

quoted, has been steadily maintained and uniformly enforced through a line of decisions of this court from *Shirley* v. *Hagar,* 3 Blackf. 225, down to *Pressley* v. *Harrison,* 102 . Ind. 14.

It is especially because the prevailing opinion, as it seems to me, overturns this rule thus maintained, and announces one which, in my judgment, is anomalous, and, so far as I have been able to discover, without precedent anywhere, that I am unable to yield my assent to it.

In my opinion it would be much better to hold that a receiver might be appointed without any action pending at all, than to bring about the pendency of the action by a holding which constitutes a judge in vacation, wherever he may happen to be, the court, before whom parties may enter an appearance, which has uniformly heretofore been required to be entered in term time, and proved only by the record made in open court.

The rule, as it has been strictly held by this and other courts, has been, that all business and matters which pertain to the general jurisdiction of courts can only be transacted when the court is in session in regular or special term, sitting with its clerk, record and officers as a court. Business which may be transacted at any other time is exceptional, and for authority to do it express warrant must be found in the statute.

For the foregoing reasons I think an appearance can not be entered for the first time before a judge in vacation, and that pleadings in the case can not be filed with or entertained by him. The pleadings referred to in section 1225, R. S. 1881, are very clearly pleadings filed in the case in court. This is consistent with the practice of the chancery courts, in which an application for the appointment of a receiver is never entertained, unless upon an emergency shown, until the answer of the defendant to the bill is brought in.

It may be inferred from the opinion of the majority, that

a receiver may be resorted to for the sole purpose of effectuating a voluntary assignment and placing the property of an insolvent partnership *in custodia legis,* to be administered for the benefit of creditors. It is suggested, too, that if there is any conflict between the statute regulating voluntary assignments and that under which receivers are appointed, the latter must prevail. My view of the matter is, the statutes in no wise relate to the same subject, and are in no manner in conflict. The statute regulating voluntary assignments was designed to secure to a failing debtor the opportunity to make an equal distribution of his estate among all of his creditors, and, as this court has often held, where a statute prescribes a remedy which was not known at common law, such remedy is exclusive of all others. Receiverships, on the other hand, were never designed or used for the purpose of accomplishing assignments and the distribution of property.

A receiver is an adjunct of a court of chancery, an indifferent person to take charge of and preserve property which is the subject of litigation until the suit involving the title is terminated and the right to the property settled. Moreover, it is a cardinal principle, everywhere enforced, that a receiver will never be appointed by a court of chancery if there is any other expedient remedy available to accomplish the same end for which the receiver is applied for. Thus, where proceedings were instituted to wind up a banking corporation for the appointment of a receiver to wind up its affairs, but it was apparent from the bill that the matters might be remedied by following the prescribed course of law, the application was not entertained. High Receivers, sections 10, 301, 403, 555, 592.

Filed Feb. 9, 1886.