Nott, J.,
delivered the opinion of the court:
The chief questions presented by this case involve the construction to be given to two statutory provisions found in the Sundry Civil Appropriation Act Ath August, 1886 (24 Stat. L., 222, 253), and the Sundry Civil Appropriation Act 3d March, 1887 (ib., 509,541).
On the same day with the above act of 1886 was also passed the General Deficiency Act, 1886 (pp. 256, 274), wherein there was appropriated $50,000 for the fees of commissioners, with a proviso attached that “ they shall not be entitled to any docket fees?
There was nothing in the proviso or in the act which coupled this provision with the appropriation or restrained its operation to that extent. The court accordingly held, when it came up for interpretation, that while it was not retroactive and did not affect services already performed and docket fees already earned, it nevertheless was intended to cut off docket fees in the future. (Faris Case, 23 C. Cls, R., 374.)
The statute now under consideration relates to the fees of clerks and marshals, and, so far as the present suit is concerned, is in these words:
“ Nor shall any part of the money appropriated by this act be used in payment of a per diem compensation to any clerk or marshal for attendance in court, except for days when business is actually transacted in court, and when they attend under sections 583, 584, 671,672,2013 of the Revised Statutes, which fact shall be certified in the approval of their accounts.” (24 Stat. L., p. 253.)
It was, of course, within the power of Congress to change the compensation of clerks and marshals, to allow them fees where none had been allowed before, or take away fees which existing statutes gave; but it was equally within their power to place a restriction upon the accounting officers of the Treasury *9 as to a particular appropriation, taking away from them the discretion of paying the per diem in certain cases, and leaving clerks and marshals to their remedy at law, to the end that the right, if it existed, might be judicially determined.
If any doubt could exist as to the effect which should be given to this statute, it would be removed by the subsequent action of the legislative power, for Congress, a year later, when legislating concerning the same fees of the same officers, provided in unequivocal language:
“ For fees of clerks, one hundred and seventy-five thousand ’dollars: Provided, That hereafter no part of the appropriations made for the payment of fees for United States marshals or •clerks shall be used to pay'the fees of United States marshals- or clerks upon any writ or bench warrant for the arrest of any person or persons who may be indicted by any United States grand jury, or against whom an information may be filed, where such person or persons is or are under a recognizance taken by or before any United States commissioner or other officer authorized by law to take such recoguizance, requiring the appearance of such person or persons before the court in which such indictment is found or information is filed, and when such recognizance has not been forfeited or said defendant is not in default, unless the court iu which such indictment or information is pending orders a warrant to issue; nor shall any part of any money appropriated be used in payment of a per diem compensation to any attorney, clerk, or marshal for attendance in court except for days when the court is open by the judge for business or business is actually transacted in court. (24= Stat. L., p. 541.)
It must therefore be held, under the decision of this court in the Jones Case (21 C. Cls. R., 1), that the claimant was entitled to his per diem for days when the court was opened at tke,time and place appointed by law, though no suitors appeared and it was adjourned without transacting any business whatever.
But in the present case the per diem fees sought to be recovered ran through a period extending from January 1,1886, to June 30,1887, and a portion of the services were rendered subsequent to the 3d March, 1887, when the statute last quoted was enacted. Certain items were rejected by the accounting officers because on those days no business was transacted; and the question consequently is whether the per diem on those days when the court was opened, but no business transacted, is cut off by the statute.
*10 It will be observed that tbe language of the last clause varies from that of the preceding statute in two particulars : First, it brings in attorneys and subjects them to the operation of the statute 5 second, after prohibiting in general terms the payment of 11 a per diem compensation to any attorney, clerk, or marshal for attendence in court,” it makes, apparently, two exceptions, “ except for days when the court is open [sie] by the judge for business or business is actually transacted in court.”
Taken literally, the language of the statute imports that an attorney, clerk, or marshal shall continue to receive his per diem fee: First, whenever a court is opened by the judge thereof j second, whenever business is transacted in court. In the present case no business was transacted, but it is conceded that the first alternative condition was complied with — that the court was opened by the judge.
There are a number of rules for the interpretation of statutes, such as “ the will of the legislature must be gathered from the language of the act,” “ words must be taken in their ordinary signification,” and the like; but a fundamental principle underlying these rules is that an intelligent purpose shall be ascribed to the law-making power, an intention to accomplish something by the enactment. Before the judiciary undertakes to discover what the legislature intended to do, it must concede that the legislative will intended to do something.
In the statute now under consideration it is manifest that if the intent be gathered simply from the literal import of the language, and if the words of the act be taken simply in their ordinary signification, nothing whatever will be accomplished by the. enactment.
We all know, laymen as well as lawyers, that a court may be opened by the judge and no business be transacted. We also know equally well that, conversely, no business can be transacted by a court unless it has been opened by a judge. The literal import of the language of the statute is that although a court be not opened and no judge be present, nevertheless it may proceed to the transaction of judicial business, and that if it does so the clerk will be entitled to his per diem.
This proposition is on its face an absurdity, so palpable an absurdity that it can not be ascribed to the legislative intent. The question, therefore, is whether one word, and that word a *11 mere disjunctive conjunction, shall override the purpose of the enactment (whatever it was) and render the statute practically inoperative.
This question of course must be answered in the negative. The court must ascribe an intelligent purpose to Congress, and must, if possible, discover and give effect to it. That purpose seems to the court a plain one, especially when we refer back to the temporary statutory provision of the preceding year. It is to restrict the per diem compensation of attorneys, clerks, and marshals to days when a court having been duly opened for business by a judge business is actually transacted.
This word “or” must, therefore, be deemed a clerical error for the word “ and,” and the claimant’s recovery must be restricted to a period terminating on the 3d of March, 1887.
The other items of the case are thought by the court to be within decisions in The United States v. Jones (134 U. S. R.,483) and Singleton (22 C. Cls. R., p. 118).
The- judgment of the court is that the claimant recover of the defendants the sum of $1,028.