BUTLER v. UNITED STATES.

(District Court, D. Indiana. June 15, 1898.)

No. 5,796.

1. FEES OF COURT OFFICERS—ATTENDANCE AND PER DIEMS.
    Rev. St. §§ 574, 638, declare that the circuit and district courts sitting in equity or admiralty shall be deemed "always open" for the transaction of certain business. The act of March 3, 1887, forbids payment of per diems or attendance fees except for days "when the court is opened by the judge for business, or business is actually transacted in court," etc. *Held*, that the clerk is entitled to attendance fees for days between regular terms on which he is required to attend, and does attend, on the transaction of business by the judge.

2. SAME—CLERK'S FEES—DOCKETS AND INDEXES.
    When, after docket entries, indexes, etc., have been made, a criminal case is transferred from one place of holding the district court to another, and then discontinued in the former place, the clerk is entitled to his docket and index fees therefor, although the costs have not been taxed at the place to which the case is removed.

3. SAME—SWEARING WITNESSES.
    Where the witnesses for both parties are sworn at the same time, pursuant to an order of the judge, the clerk is entitled to have his fees therefor paid by the government.

4. SAME—AFFIDAVITS OF INDIGENT DEFENDANTS.
    The clerk is entitled to a fee of 10 cents each for filing and entering affidavits of indigent defendants in criminal cases, on which the court makes an order for summoning witnesses in their behalf.

5. SAME—AFFIDAVITS TO MARSHAL'S ACCOUNTS.
    The clerk is entitled to fees for taking the affidavit of the marshal proving the accounts rendered by him, since such proofs are for the convenience and protection of the government.

The facts in the above-entitled cause are stated in the finding of the court as follows:

(1) The court finds that the material averments of the petition and the facts alleged therein are true.

(2) And the court finds that Noble C. Butler, the petitioner, was on the filing of the petition, and is now, a citizen and resident of the city of Indianapolis

and state of Indiana, and that the petitioner was on and before the first day of January, 1897, and has been ever since, and is now, clerk of the circuit and district courts of the United States for the district of Indiana, duly appointed, commissioned, and qualified, and acting as such clerk during all of said period.

(3) And the court finds that during the calendar year 1897 said courts were open under and by virtue of sections 574 and 638 of the Revised Statutes of the United States, for the transaction of equity and admiralty business therein as provided in said statutes on each and all of the days hereinafter mentioned, to wit, said circuit court was open, as aforesaid, at Indianapolis on January 13th, 15th, 19th, 22d, 23d, 28th, 29th, February 6th, July 2d, 24th, August 7th, 14th, 16th, 17th, 23d, 30th, September 6th, and October 16th, and at Evansville on October 22d, and said district court was open, as aforesaid, at Evansville on January 1st, February 5th, June 11th, August 12th, October 19th, 30th, and November 2d, making an aggregate of twenty-six days; that on each and all of said days one of the judges of said courts respectively was present therein for the transaction of such business; that on each and all of said days such business or some portion thereof was actually transacted in and by said courts respectively; that such business so transacted as aforesaid consisted of orders, decrees, and rules which were made and entered in and by said courts, respectively, upon their records in equity and admiralty causes that were pending therein, and as authorized by said statutes; that on each and all of said days the petitioner was required to be, and was, in attendance as such clerk upon and in said courts, respectively, with the records of said courts at the place where said records are required to be kept by him, and received from said courts, respectively, their orders, decrees, and rules as aforesaid, and their instructions concerning the same, and spread said orders, decrees, and rules on the records of said courts, respectively, in accordance with their instructions, as aforesaid, and also the date of each and all of said orders, decrees, and rules, and the name of the judge by whom said courts, respectively, were held when said orders, decrees, and rules were made and entered by them as aforesaid, and other matters incident thereto, all of which appears upon said records for each and all of said days in manner and form as recited and set forth in a transcript of the records of said circuit court for one of said days, to wit, the 19th day of January, 1897, which is as follows:

"November Term, 1896. In Recess. Tuesday, January 19th, 1897. In Chambers.

"Before Honorable William A. Woods, Judge.

"Mark T. Cox et al. vs. The Terre Haute & Indianapolis Railroad Company. (9,395, Chancery.)

"Comes now Frank A. Pickerill, and files his petition herein, praying the court to authorize Volney T. Malott, receiver herein, to pay the petitioner the sum of fourteen hundred dollars in settlement of his claim for damages for injuries, which petition is in the words and figures following, to wit: [H. I.] And now also comes the said receiver by John G. Williams, his solicitor. And the court having examined said petition, and inquired into the truth of the matters therein averred, finds that the same is true, and that the court is of the opinion that the prayer of said petition ought to be granted. It is accordingly here and now ordered by the court that the receiver herein be and he is now and hereby, authorized and directed to pay to said petitioner the sum of fourteen hundred dollars in settlement of his said claim for damages, upon his executing a proper voucher and acquittance therefor."

(4) And the court finds that on the 23d day of February, 1897, the case of the United States against Albert Wade, which was then pending in said district court and upon its dockets at Indianapolis, was, by order of said court, discontinued at Indianapolis, and transferred to the dockets of said court at Evansville; that previous to the discontinuance and transfer of said case, as aforesaid, the petitioner, as such clerk, entered the same upon the dockets and indexes of said court at Indianapolis, and taxed the costs therein at Indianapolis, and rendered other services at Indianapolis in connection therewith.

(5) And the court finds that on the 24th day of May, 1897, during the progress of the trial of the United States against Benjamin Bannard, in said district

court, the petitioner, as such clerk, was ordered by said court to administer oaths to eighteen witnesses therein; and in obedience to the order of said court, and not otherwise, such oaths were administered by the petitioner, as such clerk.

(6) And the court finds that during the months of April, May, and June, 1897, twenty-two affidavits of indigent defendants under indictment in said district court for witnesses in their behalf at the expense of the United States were presented to said court; and the petitioner as such clerk, was thereupon ordered by said court to file and enter said affidavits, and enter orders thereon for the attendance of such witnesses accordingly; and said affidavits were filed and entered, and orders were entered thereon by the petitioner, as such clerk, in obedience to the order and direction of the court, and not otherwise.

(7) And the court finds that during the months of July, August, and September, 1897, the petitioner, as such clerk of the district court, administered eleven oaths to the United States marshal for the district of Indiana, and made and entered eleven certificates thereof or jurats in the verification of his accounts as such marshal with the government of the United States, the same being required for its own convenience and protection.

(8) And the court finds that accounts for the foregoing fees, duly verified by the oath of the petitioner, have been rendered by him as such clerk, according to law, in and to said courts, respectively, in the presence of the district attorney for the district of Indiana or his assistant; and that the petitioner has proved in open court to the satisfaction of said courts, respectively, that the services aforesaid have been actually and necessarily performed as stated therein, and that orders approving said accounts have been duly entered of record in and by said courts, respectively, and that said accounts, with duly-certified copies of said orders approving the same, have been presented for audit and payment to the accounting officers of the treasury department of the United States, and have been disallowed by them, and are now unpaid.

(9) And the court finds that the whole amount of the fees and emoluments of the petitioner as such clerk in each and both of said courts during the calendar year 1897, including the fees aforesaid, was less than the maximum amount of his personal compensation, as allowed by law.

The court thereupon found, as its conclusions of law from these facts, that there was due the petitioner from the United States the sums of $130 for attendance, $1 for dockets and indexes, etc., $1.80 for administering oaths to witnesses, $2.20 for filing and entering affidavits for indigent defendants, $2.75 for jurats to marshal's accounts, and rendered judgment for the total sum of $137.75 accordingly.

John R. Wilson, for petitioner.

Albert W. Wishard, U. S. Atty., and Jesse J. M. La Follette, Asst. U. S. Atty.

BAKER, District Judge. The chief question in this case may be stated as follows: Is a clerk of a United States circuit or district court, which is, by express terms of the statutes, "always open" for the transaction of the business which is described therein, who is required to attend and attends on the transaction of such business by a judge or judges of the court under the authority of these statutes, upon days that are not within or any part of a regular term, entitled to attendance fees, under other statutes that allow such fees to him on days when "business is actually transacted in court"? A bare statement of the question shows that it is entitled to receive an affirmative answer, but, as a negative answer has been recently given the question by the accounting officers of the treasury, a further discussion of it seems to be necessary.

87 F.—42

The nisi prius courts of the United States are described in the statutes according to their territorial jurisdiction as circuit and district courts; and, according to the subject-matter of their jurisdiction, as common law, equity or chancery courts, admiralty courts, and bankruptcy courts. A common-law court is in session during a regular term which is begun and held at a time and place fixed by law, and continued by adjournment until its close. It is also in session during a special term, which may be appointed by the court itself or a judge thereof. Chancery, admiralty, and bankruptcy courts are in session during these regular and special terms, and they also sit, and therefore are in session, whenever and wherever the judicial business which is described in sections 574, 638, and 4973 of the Revised Statutes, and in section 16, Act Feb. 4, 1887, is actually transacted by one or more of the judges of these courts. In all of these cases, when a court is in session during a regular or special term, or when it is in session by reason of the transaction of business under the sections aforesaid, it is equally necessary that its clerk should be in attendance upon it, with its records, at the place where the records are kept by him, to receive the orders, decrees, and rules of the court and its instructions concerning them. If no business were transacted at a regular or special term, his attendance would be necessary; and it is always necessary when business is transacted in or by the court. It was accordingly provided by the act of congress approved February 26, 1853, and section 828, Rev. St., that for such attendance a clerk should have a fee of "five dollars a day." Under this law, clerks were allowed for their "attendance" only, without reference to the transaction of business by the court, until after the appointment of Mr. Durham as first comptroller of the treasury, in the year 1885. Without any change in the law, he refused to allow clerks for their "attendance" unless the court had transacted business; and the court of claims held, on December 14, 1885, in the case of Jones v. U. S., 21 Ct. Cl. 1, that his refusal to do so was illegal. He thereupon secured a "rider" on the sundry civil act of August 4, 1886, limiting the appropriation for the current fiscal year for attendance upon the courts to those days only "when business is actually transacted" in them, without changing the general law upon the subject; and it was apparently passed without discussion or notice. It is as follows:

"* * * Nor shall any part of the money appropriated by this act be used in payment of a per diem compensation to any clerk or marshal for attendance in court except for days when business is actually transacted in court, and when they attend, under sections 583, 584, 671, 672, and 2013 of the Revised Statutes, which fact shall be certified in the approval of their accounts." 24 Stat. 253.

Under this Durham act of 1886, a per diem fee for the transaction of business was substituted for the attendance fee. It deprived clerks of their fees for mere attendance. The basis of their compensation was changed from "attendance" to the "transaction of business," and a per diem fee for the general transaction of business was added to the specific fees which are allowed in connection therewith. But the Durham act of 1886 applied to a single appropriation only, and was

limited thereto by its own terms. It did not change the general law on the subject. U. S. v. Aldrich, 7 C. C. A. 431, 58 Fed. 688.

Within seven months afterwards, the Durham act of 1886 was proposed for enactment as a general law; and, congress being advised that it was unjust to clerks because it deprived them of any compensation for their "attendance" on those days when no business is transacted by the courts, it was rejected on that account only. In order to relieve the Durham act of 1886, as a general law, from any objection on that account, it was thereupon amended, on March 3, 1887, by inserting in it, after a full and thorough discussion of the whole matter, the words, "The court is open by the judge for business or," making it read as follows:

"* * * Nor shall any part of any money appropriated be used in payment of a per diem compensation to any attorney, clerk or marshal for attendance in court except for days when the court is open by the judge for business or business is actually transacted in court, and when they attend under sections 583, 584, 671, 672 and 2013 of the Revised Statutes, which fact shall be certified in the approval of their accounts." 24 Stat. 541.

It appears from an examination of the proceedings in congress, as reported on pages 1229, 1232, 1233, and 1234, vol. 18, pt. 2, and page 2606, pt. 3, Cong. Rec. 49th Cong., 2d Sess., that the word "open" in the act of March 3, 1887, is a misprint for the word "opened."

In this act of March 3, 1887, the per diem fee for the general transaction of business was retained, and the per diem fee for mere attendance, which had been excepted from the previous appropriation, was restored and given a permanent place in the appropriations for judicial expenses, and the provision for both is in accordance with the terms of the general law of 1853 and section 828, Rev. St. The legislative history of the act of March 3, 1887, shows, and the supreme court of the United States and the circuit court of appeals for the First circuit have held, that it is a legislative interpretation and construction of the act of 1853 and section 828, Rev. St., and in aid of those statutes, instead of a limitation on them. U. S. v. Pitman, 147 U. S. 669, 13 Sup. Ct. 425, and U. S. v. Aldrich, 7 C. C. A. 431, 58 Fed. 688. The circuit and district courts are therefore actually in session, and per diem or attendance fees are authorized when (1) "the court is opened by the judge for business," or (2) "business is actually transacted in court."

An elementary and fundamental rule in the construction of statutes is stated by Sedgwick in his work on Statutory Law (page 199), as follows:

"That construction is favored which gives effect to every clause and every part of the statute, thus producing a consistent and harmonious whole. A construction which would leave without effect any part of the language used should be rejected if an interpretation can be found which will give it effect." .

This rule is supported by federal and state authorities, and is universally conceded to be an accurate exposition of the law. The authorities are so numerous that it is hardly possible to cite all of them. It was held by the supreme court of Indiana in Palmer v. Stumph, 29 Ind. 333, that "the rule in construing a statute requires that effect is to be given to every part, and we are not to suppose words have been used which were intended to import nothing." And in Balti-

more v. Howard, 6 Har. & J. 383, the supreme court of Maryland held that "it is a rule in the exposition of statutes that one part shall be taken with another, and the whole considered together, and so construed that no clause, sentence, or word shall, if it can be avoided, be superfluous or insignificant." Even when there are two acts on the same subject, the rule is to give effect to both if possible. U. S. v. Tynen, 11 Wall. 88; Chicago, M. & St. P. Ry. Co. v. U. S., 127 U. S. 406, 8 Sup. Ct. 1194; District of Columbia v. Hutton, 143 U. S. 18, 12 Sup. Ct. 369; Frost v. Wenie, 157 U. S. 46, 15 Sup. Ct. 532.

In the late ruling and opinion of the comptroller on the appeal of the petitioner herein (4 Dec. Compt. 161), holding that a clerk is entitled to per diem fees only when "the court is opened by the judge for business," the second clause of the act of March 3, 1887, as quoted above, viz. "business is actually transacted in court," is not given any meaning whatever. The whole of the second clause is rejected as mere surplusage. It is treated as an absolute nullity, and stricken from the body of the statute. Under the rule of construction which has been quoted above, the second clause ought to have been retained by giving it a reasonable interpretation if it were possible to give it one. If a reasonable construction of the second clause is possible, it is the duty of the court to adopt it. The possibility of a reasonable construction of the second clause is therefore the first thing to be determined. Its determination depends on the meaning which shall be given the word "court." If it refers exclusively to the regular term of a court when it is "opened by the judge for business," the second clause is unnecessary and meaningless, because it is embraced in the first clause. But the word is limited in the first clause by the phrase "opened by the judge for business," because the word has a broader meaning. Otherwise the limitation would be unnecessary. Its limitation in the first clause is evidence that a court may exist without being opened by the judge, just as its limitation in the second clause, by the phrase "business is actually transacted," is evidence that a court may exist without the transaction of business. A broader meaning is expressly given the word by sections 574, 638, and 4973, Rev. St., which provide that the courts shall be "always open," and by section 16 of the act of February 4, 1887, which provides that they shall be "always in session" for certain purposes without any formal act or order of the judge in aid of them, as follows, viz.:

"Sec. 574. The district courts, as courts of admiralty, and as courts of equity, so far as equity jurisdiction has been conferred upon them, shall be deemed always open, for the purpose of filing any pleading, of issuing and returning mesne and final process, and of making and directing all interlocutory motions, orders, rules and other proceedings, preparatory to the hearing, upon their merits, of all causes pending therein. And any district judge may, upon reasonable notice to the parties, make, and direct and award, at chambers, or in the clerk's office, and in vacation as well as in term, all such process, commissions, orders, rules and other proceedings, whenever the same are not grantable of course, according to the rules and practice of the court. * * *"

"Sec. 638. The circuit courts, as courts of equity, shall be deemed always open for the purpose of filing any pleading, of issuing and returning mesne and final process, and of making and directing all interlocutory motions, orders, rules and other proceedings, preparatory to the hearing, upon their merits, of all causes pending therein. And any judge of a circuit court may,

upon reasonable notice to the parties, make, and direct and award, at chambers or in the clerk's office, and in vacation as well as in term, all such process, commissions, orders, rules and other proceedings, whenever the same are not grantable of course, according to the rules and practice of the court."

"Sec. 4973. The district courts shall be always open for the transaction of business in the exercise of their jurisdiction as courts of bankruptcy; and their powers and jurisdiction as such courts shall be exercised as well in vacation as in term time; and a judge sitting at chambers shall have the same powers and jurisdiction, including the power of keeping order and of punishing for any contempt of his authority, as when sitting in court."

"For the purposes of this act, excepting its penal provisions, the circuit courts of the United States shall be deemed to be always in session." Interstate Commerce Act Feb. 4, 1887 (24 Stat. 385).

These statutes were in existence before the act of March 3, 1887, and in its passage congress is assumed to have acted with reference to them, and to have used the word in its broader meaning as used therein. U. S. v. Trans-Missouri Freight Ass'n, 7 C. C. A. 15, 58 Fed. 58, 67. A session of the court is held under these statutes whenever the business described in them is transacted by the judge between its regular terms; and its proceedings are entered upon its records without the entry of orders for its opening or adjournment because it is always open and they are unnecessary.

In Re Delgado, 140 U. S. 586, 11 Sup. Ct. 874, the supreme court of the United States had under consideration a statute of the territory of New Mexico which provides:

"For the purpose of hearing applications for and issuing writs of mandamus the district court shall be regarded as open at all times wherever the judge of such court may be within the territory."

—and held concerning it:

"This section gives full authority for these proceedings. The original application was entitled 'in the court,' though addressed to the judge, as was proper. The hearing and judgment were by the court, and the peremptory mandamus was issued by direction of the court; and the power of the legislature to provide that the court shall always be open for certain purposes cannot be doubted." 140 U. S. 588, 11 Sup. Ct. 875.

In this decision the supreme court has not only provided a broader definition of the word "court," but it expressly holds that business which is transacted in a court that is always open under the statutes, and while it is open in that way only, is actually transacted in court.

In Michigan Cent. R. Co. v. Northern Indiana R. Co., 3 Ind. 239, the supreme court of Indiana held that:

"An interlocutory order made by a judge in vacation is to be regarded as the order of the court, for which the said judge is authorized by law to act. * * * All orders legally made in a cause, whether by the court in term, or by a judge in vacation, are regarded as orders of 'the court.' * * * The words 'the court' and the 'judge' or 'judges' are frequently used in our statutes as synonymous; and, when used with reference to orders made by the court or judges, they were, we think, intended to be so understood."

And, under a statute of Indiana which authorized the appointment of receivers "by the court or the judge thereof in vacation," it was held in Pressly v. Lamb, 105 Ind. 171, 4 N. E. 682, that:

"The judge of the court in vacation is clothed with exactly the same power and authority, no greater and no less, as is the court itself when in regular and open session. * * * When the judge of a court in vacation is

engaged in doing these acts and making these orders, it is clear, we think, * * * that his acts, orders, and proceedings in the premises, although had in vacation, are the judicial proceedings of the court whereof he is judge. * * * In a legal sense, the judge of a court is the court. Certainly, there can be no court under our laws, constitutional or statutory, without a judge. * * * It is in this legal sense, we think, the words 'judge thereof in vacation,' so often mentioned in the sections of the Code before referred to, relating to receivers, should be taken and understood to mean 'court in vacation.' "

In First Nat. Bank of Mauch Chunk v. U. S. Encaustic Tile Co., 105 Ind. 227, 236, 4 N. E. 846, it was again held, in accordance with Pressly v. Lamb, supra, with reference to the appointment of a receiver by a judge "sitting in chambers in vacation," that:

"The court having jurisdiction of the subject-matter of the suit, and of the parties thereto, plaintiffs and defendants, the proceedings had and orders made by and before the judge of the court in vacation were the proceedings and orders of the court whereof he was judge, and that such orders and proceedings, even though erroneous, were not void, and could not be collaterally attacked."

In these Indiana cases there were no statutes applicable to them like sections 574 and 638, Rev. St., declaring that the courts are "always open" for the appointment of receivers; but the supreme court held that the courts were, nevertheless, open whenever a receiver was appointed by one of their judges under the authority of a statute which authorized "a judge" to make the appointment; the provision of the state constitution concerning the judicial power being substantially the same as the provision of the federal constitution.

It was held in Bowman v. Railway Co., 102 Ill. 459, 467, where a statute authorized applications for the condemnation of private property for public use to be made "to the judge of the circuit or county court, either in vacation or term time," that these applications, whenever made and allowed, were equally proceedings in court, and that the act of a judge in vacation allowing them to be filed then was an act of the court, and could not be anything else, under a similar provision of the constitution of Illinois.

It was held by the supreme court of Georgia in Pease v. Wagnon, 20 S. E. 637, that, under sections 4221 and 4223 of the Code, a judge of the supreme court, though acting in vacation and at chambers in passing lawful orders touching trust estates, acts as a court of equity, that court being always open, and the presumptions which attach in favor of judgments and decrees by a court of general jurisdiction apply to orders thus granted. See, also, McClurg v. McClurg, 53 Mo. 173; Gold v. Railroad Co., 19 Vt. 478; Real Estate Ass'n v. Superior Court of San Francisco, 60 Cal. 223.

Even before sections 574 and 638, Rev. St., were enacted, it was held by Mr. Chief Justice Marshall, in The Little Charles, 26 Fed. Cas. 982 (No. 15,613), where objections were made to an execution on an admiralty bond because the vessel had been released on an order at chambers, that it was an order of the court. The court said:

"The objections are: (1) That the order for release is a nullity, and all the consequent proceedings void, because the order was made by the judge, at his chambers, and not in court. The judicial act appoints certain stated

terms of the district court, and gives the judge power to hold special terms at his discretion, either at the place appointed by law, 'or at such other place in the district as the nature of the business and his discretion shall direct.' (Vide sections 581 and 669, Rev. St.) No power, it is contended, is given to the judge, except when sitting as a court, and therefore the form of declaring himself to be a court is indispensable to the validity of his acts. This objection seems rather technical than substantial. By law, the district judge alone composes the court. He is a court wherever and whenever he pleases. No notice to parties is required. No previous order is necessary. The various ex parte orders which admiralty proceedings require render this informal mode of acting essential to justice and expedition. The judge will take care that neither party be injured by the orders which he makes ex parte; and, where they are of course, it is convenient that they should be made without the formality of summoning the parties to attend. It does not seem to be a violent construction of such an act to consider the judge as constituting a court whenever he proceeds on judicial business. Such seems to have been the practice in this and other districts of the United States. Had the judge prefixed to his order such words as these, 'At a special court, held at ——, on this —— day of ——, it is ordered,' etc., the proceedings would have been regular, for the law does not, in terms at least, require that the order for a special court should be made in court, or made any given time previous to its session. To every purpose of justice, the order of the judge, made in his character as a judge, is made by him as a court, whether he declares himself in words to be a court, or not. This order is, in its nature, judicial. It is such an order as may be made ex parte. It is signed by the judge in his official character, and is directed to the officer of the court. Under such circumstances, I cannot overturn a practice which is convenient, which is not liable to abuse, on a mere technical objection."

In "Courts and Their Jurisdiction," by John D. Works, the law is stated as follows:

"Although terms of court may be provided for generally, the legislature may provide that, for the transaction of business of an urgent character, the court shall be open at all times; and, under such legislation, the court may act with reference to such business during what is, as to other business, vacation. But this is not the act of a judge in vacation, but of the court. And when a judge is authorized to appoint a receiver or perform other like judicial acts, it is held that his acts, orders, and proceedings, although had in vacation, are the judicial proceedings of the court whereof he is judge. This is, however, based upon the ground that the words 'court' and 'judge' are, as used in the statutes authorizing the appointment of a receiver, synonymous." Page 377.

A review of the decisions and text-books discloses that, under a constitution which vests the judicial power in courts, it cannot be vested by the legislature anywhere else; that, where an exercise of judicial power by a judge is authorized by the legislature, it is held to have meant the court of which he is a judge; that his acts and proceedings in such a case are the acts and proceedings of the court itself; that the business which is transacted by him is actually transacted in court. It also appears that where a legislature has gone further, and specifically declared that a court shall be "always open" for the transaction of particular business, and that, so far as that particular business is concerned, the terms of the courts shall be practically continuous and without any vacations between them, the power of the legislature to do so, and to make the acts and proceedings of a judge in pursuance of his authority the acts and proceedings of the court itself, has never been denied by any court where these questions have been presented for its consideration. A

reason for such legislation by congress exists in the fact that judicial power, under the federal constitution, is vested in courts only. The power to ordain and establish inferior courts is vested in congress, and it, accordingly, regulates the scope and boundaries of their jurisdiction, prescribes the number of judges by whom they shall be held, and determines generally the conditions under which the judicial power that is vested in them shall be exercised. It fixes the time and place for holding regular terms of the courts, and it authorizes the courts or the judges to fix the time and place for holding special terms of the courts; and it authorizes the courts to sit in chambers for the transaction of an important part of their business whenever and wherever they deem it necessary or proper to do so. Rev. St. §§ 572, 574, 576, 581, 638, 661, 664, 666, 668–670, 4973, and Act Feb. 4, 1887, § 16. A single judge may hold a court, and exercise the judicial power that is vested in it, under the conditions that are prescribed by congress. But, whenever judicial power is exercised by a judge in accordance with these conditions, it is exercised by him as a court, or it is unauthorized by any constitutional authority. His acts in the exercise of judicial power are, in short, either acts of a court, or they are absolutely void.

It is therefore quite apparent that the word "court" means something more than a court that is opened by the judge for business at the beginning of a regular term, and continued by adjournment until the close thereof. As used in the act of March 3, 1887, it has a broader and more comprehensive meaning, which is definitely fixed by other federal statutes and the decisions of the supreme court of the United States and other courts. By giving this meaning to the word where it occurs in the act of March 3, 1887, a reasonable construction is given the whole act, which makes it "consistent and harmonious," and gives effect to every part of it. Any other construction fails to do so. Such a construction is not only reasonable and possible, but is in accordance with the purpose of these statutes, which is to provide a compensation for the attendance of an officer when his services are or may be required by the court. It is a compensation for "attendance," as distinguished from "services." Attendance is required in order that judicial functions may be duly performed, and it is just as necessary when judicial functions are performed in vacation as when they are performed during a regular term. It is essential for the due performance of them by the court that a record of its proceedings should be made and kept, and it is the duty of a clerk to make and keep such a record. His attendance on the court is therefore required whenever the court is held. A court is held, and a record of its proceedings is made, and kept on every day of a regular term, and on every day that business is transacted by the court in vacation. U. S. v. Aldrich, 7 C. C. A. 431, 58 Fed. 688. If clerical services are rendered in the transaction of business, either in term or vacation, an additional compensation is provided for them. A fee for the entry of orders and decrees does not compensate him for his attendance on the court in vacation, any more than it does in the course of a term. These are separate and distinct functions, and they are separately compensated.

The statement of the comptroller that it was the purpose of congress, in the enactment of the act of March 3, 1887, to "cure" some mysterious and indefinable "evil," is wholly imaginative. There is nothing in the act which justifies any such assumption, or furnishes any excuse for it. On the contrary, the history of that act, and a comparison of it with previous acts, show that it was passed to restore fees that were then arbitrarily disallowed by the comptroller after having been allowed by the accounting officers for nearly half a century. In assuming to give effect to this hypothetical policy of congress, the comptroller subjects himself to the criticism of the supreme court of the United States in the construction of other statutes.

It is said in Refrigerating Co. v. Sulzberger, 157 U. S. 1, 36, 15 Sup. Ct. 508, 516, that:

"In our judgment, the language used is so plain and unambiguous that a refusal to recognize its natural, obvious meaning would be justly regarded as indicating a purpose to change the law by judicial action, based upon some supposed policy of congress. But, as declared in Hadden v. Collector, 5 Wall. 107, 111, 'what is termed the policy of the government with reference to any particular legislation is generally a very uncertain thing, upon which all sorts of opinions, each variant from the other, may be formed by different persons. It is a ground much too unstable to rest the judgment of the court on in the interpretation of statutes.' 'Where the language of the act is explicit,' this court has said, 'there is great danger in departing from the words used, to give an effect to the law which may be supposed to have been designed by the legislature.' Scott v. Reid, 10 Pet. 524, 527."

The language of the act of March 3, 1887 is so "natural" and "obvious" and "explicit" that the sole rule of construction that is really applicable thereto is as stated by the supreme court in U. S. v. Goldenburg, 168 U. S. 95, 18 Sup. Ct. 3:

"The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used. He is presumed to know the meaning of words and the rules of grammar. The courts have no function of legislation, and simply seek to ascertain the will of the legislator. It is true there are cases in which the letter of the statute is not deemed controlling; but the cases are few and exceptional, and only arise where there are cogent reasons for believing that the letter does not fully and accurately disclose the intent."

The cases of Converse v. U. S., 26 Ct. Cl. 6, and Ackiss v. U. S., 31 Ct. Cl. 283, are cited by the district attorney in support of his contention. In the Converse Case it was erroneously held that a clerk is not entitled to his attendance fees under the first clause of the act of March 3, 1887, when the "court is opened by the judge for business," and is entitled to them only under the second clause, when "business is actually transacted in court" at a regular term. Its construction of both clauses has been rejected by the comptroller in his late ruling and opinion on the appeal of the petitioner herein (4 Dec. Comp. 161), and in the later case of S. Rodman Smith, clerk of the United States courts for the district of Delaware (Id. 508); and it cannot be accepted as an authority for his construction of the phrase "in court," which was the fundamental error of that case. Although it was decided in 1890, it has never been adopted as a rule of practice. The facts of the Ackiss Case disclose that, on the days for which attendance fees were charged, the court was neither opened by the judge for business, nor

was there any business transacted by him as a court or otherwise, and the case is therefore wholly inapplicable here.

The fee which is claimed in the case of U. S. v. Wade, was taxed and charged against the government under a provision of section 828, Rev. St., which is as follows:

"For making dockets and indexes, taxing costs and other services in a case which is dismissed or discontinued, or where judgment or decree is made or rendered without issue, one dollar."

In the statutes which established courts at Evansville, New Albany, and Ft. Wayne, provision is made for separate dockets and indexes, etc., and for deputy clerks, who shall reside and keep their offices at each of these points. Before this case was transferred from Indianapolis to Evansville, it was entered upon the dockets and indexes at Indianapolis, and it was subsequently entered upon the dockets and indexes at Evansville. The costs were taxed at Indianapolis, and will have to be taxed again at Evansville upon the final disposition of the cause. Twice the amount of work is done in the case as would have to be done if it had not been transferred. The same amount of work is done as would have been done if there had been two cases. So far as the amount of work is concerned, it is precisely the same in entering one case upon two separate sets of dockets and indexes as in entering two cases on one set of dockets and indexes. When the case was transferred to Evansville, it was "discontinued" at Indianapolis.

In U. S. v. McCandless, 147 U. S. 695, 13 Sup. Ct. 465, it was held that a docket fee was not taxable until the final disposition of a cause; but that ruling was overruled in U. S. v. Kurtz, 164 U. S. 49, 17 Sup. Ct. 15. Even in the McCandless Case it was very plainly indicated that, if the case "had reached that point where costs are taxed," a different view would have been adopted.

The principle that applied to the case under consideration here was announced by the supreme court in U. S. v. King, 147 U. S. 676, 13 Sup. Ct. 439, in which it was held that double attendance fees should be allowed a clerk where his attendance was required in two places at the same time, because the "clerk was entitled to charge for his own attendance at one place, and for that of his deputy at another." 147 U. S. 682, 13 Sup. Ct. 441.

The fees which are claimed in the case of U. S. v. Barnard were taxed and charged against the government under a provision of section 828, Rev. St., which is as follows: "For administering an oath or affirmation, except to a juror, ten cents."

In this case the witnesses were sworn during the progress of a trial, and in accordance with the order of the judge who was holding the court, and not upon a request which was addressed to the clerk by the defendant therein, as seems to have been assumed by the accounting officers. The witnesses were for both parties, and were sworn together; and they were witnesses in a public prosecution, instead of a civil action between private individuals, and the fees for swearing them are a part of the costs of the general administration of justice, which are payable by the government. It was not optional with the clerk to swear these witnesses or not. When a defendant

applies to the clerk to make an affidavit before him, he can require his fee at the time or before the service is rendered, and, failing to do so, it is his loss. But he cannot arrest the proceedings in a criminal trial until his fees for swearing witnesses are paid or secured. He cannot decline to swear them because payment is refused. In many cases the witnesses for the defendant are brought into court at the expense of the government, because the defendant is unable to procure their attendance. It is the duty of the clerk to comply with the order of the court, and swear all the witnesses in accordance therewith. Their testimony is required by the court for its own information concerning the facts of a case, and not because the defendant is interested in having them sworn. And the clerk is entitled to his fees for services rendered in accordance with the order and practice of the court.

In U. S. v. Van Duzee, 140 U. S. 169, 176, 11 Sup. Ct. 758, 761, the supreme court held:

"When a clerk performs a service in obedience to the order of the court, he is as much entitled to compensation as if he were able to put his finger on a particular clause of a statute authorizing compensation for such services."

The decision of the supreme court in the Van Duzee Case was followed by the circuit court of appeals for the Seventh circuit in U. S. v. Converse, 24 U. S. App. 89, 11 C. C. A. 274, and 63 Fed. 423. And the late comptroller held in Van Duzee's Case, 2 Dec. Comp. 217, that:

"A practice established or directly sanctioned by the judge has the same force and effect as a rule of court, and the clerk of the court acting thereunder is entitled to fees for the services rendered necessarily by such practice."

The fees which are claimed for filing and entering affidavits for indigent defendants were taxed and charged against the government, under a provision of section 828, Rev. St., which is as follows: "For filing and entering every declaration, plea, or other paper, ten cents." These affidavits were filed and entered because the court ordered the clerk to file and enter them. They were presented to the court before they were filed and entered by the clerk. They would not have been filed and entered by the clerk unless the court had ordered him to file and enter them. They were filed and entered by the clerk as the foundation of the order of the court which was made upon them. The order of the court to file and enter them, and to issue subpoenas for the witnesses named therein, was a single and indivisible act. It is conceded by the accounting officers that a clerk is entitled to his fee for entering an order of the court for summoning the witnesses (Locke's Case, 2 Dec. Comp. 578), but that he is not entitled to his fee for filing and entering the affidavit on which the order is founded (Brooks' Case, Id. 224). He is just as much entitled to his fee for one service as the other, and he is entitled to his fee for both services on precisely the same grounds. The filing and entering of the affidavit, and the entry of the order thereon, are parts of the same transaction. See U. S. v. Van Duzee, supra, U. S. v. Converse, supra, and Van Duzee's Case, 2 Dec. Comp. 217, as to fees of clerks for services rendered under an order of the court, and in accordance with its practice.

The fees which are claimed for affidavits to the marshal's accounts were taxed and charged against the government under the act of

congress approved February 22, 1875 (18 Stat. 333), as interpreted by the supreme court in U. S. v. Van Duzee, 140 U. S. 169, 171 (item 3), 11 Sup. Ct. 758. Under that statute, a marshal is required to "render" his accounts to the court, and to "prove" them by his own affidavit. An account is "rendered" when it is presented. Rendering an account, and proving an account, are separate and distinct transactions, under the statute. The former does not include the latter. The account is rendered for the benefit of the marshal. It is proved for the "convenience and protection of the government," and "the expenses attendant thereon are proper charges against the government." Such is the language of the supreme court, and the principle of the decision is plain. Whatever is done for the benefit of the marshal is chargeable against himself. Whatever is done for the "convenience and protection" of the government is chargeable against itself. No charge by the clerk for affidavits was under consideration in this case. But in the case of U. S. v. Allred, 155 U. S. 591, 15 Sup. Ct. 231, where a charge for affidavits by deputy marshals to their accounts was under consideration, the supreme court held, in accordance with the principle of its decision in U. S. v. Van Duzee, supra, that the fees for these affidavits should be paid by the government. It is perfectly clear that, if the fees for affidavits by deputy marshals to their accounts are chargeable against the government, the fees for affidavits by marshals to their accounts must also be chargeable against the government, on the principle of the Van Duzee Case. Nevertheless, the accounting officers have invented a novel distinction between these two classes of affidavits, namely: Where an affidavit to an account is required, for the convenience and protection of the government, by an act of congress, it is not chargeable against the government; but where an affidavit to an account is required, for the convenience and protection of the government, by the attorney general or the accounting officers, it is chargeable against the government. Marsh's Case, 2 Dec. Comp. 482.

In U. S. v. Jones, 147 U. S. 672, 673 (item 1), 13 Sup. Ct. 437, the supreme court placed its own construction on its decision in U. S. v. Van Duzee, supra, as follows:

"The labor of preparing one's own accounts for services or fees is a mere incident to the rendition of the service, and is universally assumed by the creditor as his own burden; but the approval of the account of another stands upon a different footing, and if performed at the request of the government, or under a statute requiring it to be performed for the protection of the government, there is no reason why the clerk should not receive such fees therefor as he receives for analogous services in other matters."

These considerations, in the opinion of the court, justify and require the allowance of the fees in question. So ordered.