## THE UNITED STATES v. JOSEPH H. WARREN.

(Filed February 5, 1903.)

1. **CLERKS OF U. S. DISTRICT COURTS—Compensation.** Clerks of the district courts of Oklahoma are entitled to compensation from the United States for attendance on court while actually in session, at the rate of five dollars per day, without reference to whether business is transacted or not.

2. **DISTRICT COURTS—Territorial Have No Jurisdiction of Claims for Fees Against United States.** The district courts of Oklahoma have no jurisdiction of claims by officers against the United States for fees, salary or compensation for official services.

3. **SAME—Practice When United States is Party.** When the United States is plaintiff in an action, and the defendant has pleaded a set-off, no judgment can be rendered against the government for any balance found due the defendant, or for costs.

4. **SAME.** While no affirmative judgment can be rendered against the United States on a set-off in favor of the defendant, yet when the United States brings a suit they waive their exemption so far as to allow a presentation by the defendant of set-offs, legal and equitable, to the extent of the demand made, but no judgment can be rendered against the United States for any balance found due the defendant.

(Syllabus by the Court.)

*Error from the District Court of Canadian County; before Clinton F. Irwin, Trial Judge.*

*Horace Speed, U. S. Attorney,* for plaintiff in error.

No appearance for defendant in error.

Reversed and remanded.

Opinion of the court by

BURFORD, C. J.: Plaintiff below, the United States, brought an action in the district court of Canadian county

to recover from the defendant, Joseph H. Warren, the sum of one hundred and twenty-five dollars and eighty cents claimed to have been erroneously paid to the defendant as compensation while he was clerk of the Second judicial district. And to the petition of plaintiff, defendant, Warren, filed an answer setting forth substantially the same things as alleged in the petition of plaintiff, and the exhibits thereto attached, claiming a judgment against the United States in the sum of six hundred and eight and 40-100 ($608.40) dollars. The case was submitted upon an agreed statement of facts which is as follows:

"That from July 1, 1896, to September 9, 1898, the defendant, Joseph H. Warren, was clerk of the court of the Second judicial district of Oklahoma, duly appointed, qualified and acting; that during said period the defendant as such clerk, performed services for and in behalf of the United States, and his accounts therefor, duly verified by his oath, were submitted to the court for approval, in the presence of the district attorney, as required by law, and the court approved the same, as just and in accordance with law, and the order of approval was duly entered of record; that said accounts so approved were presented to the accounting officers of the treasury for allowance and payment, and final action was taken thereon according to the provisions of the act approved July 1, 1894.

"That defendant's accounts for the six months ending December 31, 1897, were allowed and paid; that subsequently, said account was revised by the comptroller, and a re-charge was made against defendant, amounting to $355. See report 54612 or more specifically set out in plaintiff's petition.

"That the re-charge was had solely upon the ground that the defendant was not allowed a per diem for his services when no United States business was transacted; that for each

and every day so re-charged against him, court was duly opened by the judge of said court, and business was transacted.

"That defendant's accounts, amounting to $511.75, for the six months ending June 30, 1896, was allowed in the sum of $172.30, (report 54617), which amount was withheld from him on account of said re-charge, and part of said account, amounting to $339.20, was disallowed because no United States business was transacted on certain days charged for in said account.

"That defendant's account for the period from July 1st to September 9th, 1897, was allowed in the sum of $1.75, which was withheld and applied upon said re-charge that the sum of $40 was disallowed, and items suspended on reports, because the charges therein made were for days when no United States business was transacted.

"That said sums were disallowed for the reason that no United States business was transacted on the days for which payment was withheld; that for each day with held, as shown by exhibits 'A' and 'B' attached to answer and cross-petition, and as shown by reports filed and approved by the judge, court was open for the transaction of business and business transacted.

"That items suspended on reports 30021 and 43352 were allowed by the auditor, on explanation by the defendant, in the sum of $54.15, which was withheld and applied upon said re-charge.

"That the items (per diems) re-charged against the defendant, and other items disallowed in the accounts above referred to, were re-charged and disallowed for the reason that no United States business was transacted on these days.

"No part of said allowance above set out has been paid, and no part of said disallowance has been paid, to defendant, or any one for him."

Upon consideration of the agreed statement of facts, the court below rendered judgment in favor of the defendant and against the United States in the sum of $608 and the costs. Motion for a new trial having been made and over-ruled, the case was brought to this court for review.

Two questions are presented for our determination. First: Is the clerk of a district court in the Territory of Oklahoma entitled to a per diem of $5.00 per day for attendance upon the court when in session, when no United States business is transacted? ·

Second: Where the United States sues an individual to recover money alleged to be due the United States, can the defendant recover judgment against the United States on a set-off or counter-claim?

Neither of these questions are apparently difficult of solution, yet the first has been made the basis of several departmental rulings, and so many strange limitations and modifications have been interpolated into the law, in order to make it conform to what the auditing officers think it should be, that congress would hardly recognize its own offspring in its new habiliments. Stripped of these engrafted modifications, the law seems plain and the legislative intent clear.

This question was before Mr. Comptroller Tracewell, an able and painstaking officer, and while he expressed doubt as to the correctness of his views, he announced a conclusion adverse to the claimant, but based upon a consideration of a statute not applicable to the case and assumed facts which do not exist. (*Warren's case*, 5 Comp. Dec. 741.)

By a later decision, the departmental officers have pro-

mulgated a ruling to the effect that the clerk is entitled to a per diem for each day court is in session, provided he keeps a separate record for United States business, and causes this record to show the convening and adjournment of the court each day and the judge present and presiding. Another departmental interpolation which congress did not deem necessary to incorporate.

A proper understanding of the status of the courts in this territory, and review of the congressional enactments relating thereto, ought to clear away the mist and make the truth plain. The act of congress creating the Territory of Oklahoma was approved May 2, 1890, 26 U. S. Statutes at Large, 81, and the portion relating to the courts, and necessary to a proper understanding of the question before us is as follows:

"That the judicial power of said territory shall be vested in a supreme court, district courts, probate courts, and justices of the peace. * * * * and the said supreme and district courts, respectively, shall possess chancery as well as common law jurisdiction and authority for redress of all wrongs committed against the constitution or laws of the United States or of the territory affecting persons or property. . Said territory shall be divided into three judicial districts, and a district court shall be held in each county in said district thereof by one of the justices of the supreme court, at such time and place as may be prescribed by law, and each judge after assignment shall reside in the district to which he is assigned. The supreme court shall define said judicial districts, and shall fix the times and places at each county seat in each district where the district court shall be held and designate the judge who shall preside therein. And the territory not embraced in organized counties shall be attached for judicial purposes to such organized county or counties as the supreme court may determine. The supreme court of said territory

shall appoint its own clerk, who shall hold his office at the pleasure of the court for which he is appointed. Each district court shall appoint its clerk, who shall also be the register in chancery, and shall keep his office where the court may be held. * * * * and each of the said district courts shall have and exercise, exclusive of any court heretofore estab-lished, the same jurisdiction in all cases arising under the constitution and laws of the United States as is vested in the circuit and district courts of the United States."

It will be observed that a district court is created, each district to be composed of a number of counties, and that a term of said court shall be held in each county, at the county seat, the times to be fixed by the supreme court. This district court is presided over by one of the justices of the supreme court, who is a United States officer, appointed by the president, confirmed by the United States senate, and paid by the United States. The court is required to hold regular terms and the supreme court is required to fix the time and place of holding such terms. Such court when convened does not sit as a United States district court at one moment, as a United States circuit court at another, and as a territorial court at still another, and here is where the confusion arises. The district court of this territory is a congressional court, created by the legislative department of the United States, furnished and paid for by the United States for the use and benefit of the inhabitants of one of its subordinate dependencies. This court has all the powers and jurisdiction of a court at common law or in chancery, for the redress of wrongs civil and criminal, and has all the powers and jurisdiction of a circuit and a district court of the United States. It has common law, equity, admiralty and bankruptcy

jurisdiction. In fact, such court has the most extensive jurisdiction of any court whose authority emanates from the sovereignty vested in the United States as a nation. Now, when this court is in session, it sits vested with one and all these powers, collectively and continuously. It may exercise one power one hour and another the next, but it sits in but one capacity, that of a congressional territorial court. It is true each district court is required to set apart the first six days for the trial of cases arising under the laws and constitution of the United States, if necessary, but this only prescribes the order of business, and does not relate to a question of jurisdiction. The district court is open every moment it is in session for the transaction of United States business, and its power and jurisdiction to hear and determine such cases is present at every moment of its existence. And in actual practice we may say it is a matter of common knowledge that the United States business, the trial of persons charged with violations of the penal laws of the United States, the trial of cases in bankruptcy, empaneling federal grand juries, hearing demurrers to indictments and motions to quash, and various other federal matters are constantly interspersed with the other business at such times as it may suit the convenience of the United States attorney and other litigants to present them. The district court combines the federal and territorial jurisdictions, all of which is derived from the United States and is exercised by virtue of congressional authority.

This being the status of the district court, what as to its clerk? The clerk is an officer authorized by congress; appointed by a federal officer; recognized as an officer of the United States; his duties prescribed and his compensation

fixed by congressional enactments.  He is required to attend
upon the sessions of the court; he constitutes a component
part of the court and must  attend it daily and record its
proceedings.  He gives his bond to the United States; takes
the oath required by the United States, and is entitled to the
emoluments authorized by the United States.

While it is true the legislature of the territory is author-
ized to legislate upon all rightful subjects not inconsistent with
the laws of the United States, yet it is also a fundamental
principle that where congress has legislated upon a specific sub-
ject, its subordinate is not permitted to legislate on the same
subject.  The law of the superior body excludes the right of
the inferior body to change or modify such law.

What has congress said·upon the subject of clerk's fees?
Sec. 13, Organic act, among other things, provides:  ·

"There shall be allowed to the    *    *    *    *    clerks of
the supreme and district courts, the same fees as are pre-
scribed for similar services by such persons in chapter sixteen,
title judiciary, of the Revised Statutes of the United States."

By reference to chapter 16, R. S. U. S. 1878, p. 153, we
find the following provisions applicable to the question under
consideration:

"Sec. 823: The following and no other compensation
shall be taxed and allowed to *    *    *    * clerks of the circuit
and district courts    *    *    *    *    in the several states and
territories, except in cases otherwise expressly provided by
law."

Section 828, after setting out specific fees for services of
clerk, further provides:

"For traveling from the office·of the clerk, where he is

required to reside, to the place of holding any court requir-
ed by law to be held, five cents a mile for going and five cents
for returning and five dollars a day for his attendance on the
court while actually in session."

It would seem that these several provisions make it suf-
ficiently clear that no room is left for construction, and yet the
counsel representing the United States, and the auditing offi-
cers of the treasury department insist upon giving plain Eng-
lish language some other meaning than that which in common
acceptation it imports. Let us review these statutes. The
clerks of the district courts in Oklahoma shall be allowed the
same fees as are prescribed for such persons for similar ser-
vices in the judiciary act. The judiciary act prescribes that the
clerk of the district court shall have five dollars a day for
his attendance on the court while actually in session. Not five
dollars a day for each day business is transacted; not five dol-
lars a day for each day United States business is transacted;
not five dollars a day for each day a separate record is kept
for United States buisness; not five dollars a day for each day
court is opened and the judge present and United States bus-
iness is actually transacted. No, these limitations on the
clerk's compensation are all departmental interpolations and
have no place in the legislative acts. The law is plain, there
is no room for construction. The court when in session is
open for United States business at all times, and congress
know this. The clerk is required to attend on every day of
the sessions of the court, and congress know this, and in fix-
ing the compensation of such officer, congress expressly said he
shall have five dollars for each day's attendance on such ses-
sion. He is not required to transact any business. This per
diem is not for services, but is for attendance; he must attend

the court, have his records in court and be ready to record any proceedings that may be had or done by the court. For his services when in attendance other fees are prescribed. If he records a ruling, an order or a judgment, swears a witness or issues a process, he is entitled to specific compensation for each official act. These fees are paid by the litigants, but for his attendance on the court, for his presence as an officer and constituent element of the court, for that and that alone, whether he performs any official services or not, he is entitled to his compensation, and congress having fixed this compensation and placed no limitations or conditions upon his right to it, neither auditing officers nor courts have any authority to give a different effect to the law by adding words or interpolating sentences which congress did not see fit to make use of.

The proper construction to be given the statute giving the clerk a per diem compensation for attendance, is ably discussed and a logical conclusion reached by Judge Baker, of the district court of Indiana in *Butler's case* 87 Fed. 655.

In Mr. Comptroller Tracewell's opinion in this case, he refers to the act of March 3, 1887, (24 Stat. 541), relating to the per diem of attorneys, clerks and marshals as being applicable to and bearing upon the compensation of clerks in Oklahoma. In this the comptroller was in error. The act of 1887 was in force supplemental to and concurrent with section 828, Revised Statutes, and the two are very properly construed together, unless otherwise provided by the legislative branch of the government. But in adopting the law which should govern compensation of clerks in Oklahoma, congress by act of May 2, 1890, adopted the provisions of "chapter 16, title judiciary, of the Revised Statutes of the United States," and omit-

ted to adopt the modifications provided in the act of March 3, 1887. Hence, the compensation of clerks of the district courts in Oklahoma is to be determined by the provisions of the judiciary act, chapter 16, R. S. 1878, unaffected by the provisions of the later provisions in act of March 3, 1887. The provisions of secs. 823 and 828 had a well settled construction at the time congress adopted the act creating the courts in Oklahoma. It had been the settled practice of the government as indicated by the action of the treasury officials to pay clerks for "attendance" upon the courts whether any business was transacted or not, up to 1885, when Mr. Durham, comptroller of the treasury, refused to pay clerks for attendance unless business was actually transacted, and the court of claims in the case of *Jones v. United States*, 21 Ct. Cl. 1, held that his refusal to allow the compensation of clerks for attendance when no business was transacted was illegal and held that the former established practice was correct. After this the law was changed by act of March 3, 1887, but as before stated, this latter act was not embraced in the law as adopted for clerks in Oklahoma, and we have nothing to do with the practices since its adoption or of its construction.

The courts invariably held that under the provisions of sec. 828 clerks were entitled to the five dollars per day compensation for his attendance on the court when actually in session, whether any business was transacted or not. (*United States v. Pitman,* 147 U. S. 669; *Goodrich v. United States,* 35 Fed. Rep. 193; *Erwin v. United States,* 37 Fed. Rep. 470; *United States v. Aldrich,* [C. C. A.] 58 Fed. Rep. 688; *Kinney v. United States,* 60 Fed. Rep. 883; *Butler's case,* 4 Comp. Dec. 161; *Butler v. United States,* 87 Fed Rep. 655; *Finnell v.*

*United States,* 32 C. Cl. 634; *United States v. Finnell,* 185 U. S. 236.)

It is contended that inasmuch as the act of congress, approved July 1, 1898, provides that the clerks in Oklahoma "shall be required to report in their semi-annual emolument reports all fees earned in United States cases only," that it was the evident purpose of congress that the United States should only pay for their attendance upon the courts when in session, and when United States business is actually transacted. This is going a long way, both in distance and time, to find a reason for such construction.

Those familiar with the history of this legislation would be much surprised to learn that the effect of it had been to reduce the compensation of clerks rather than to increase it. The conditions in territories do not seem to be generally understood, and there is a continued effort by the officials of the administrative departments to make the conditions that exist in the federal courts in a state fit the conditions in a territory. Such efforts always lead to confusion and sooner or later a resort to the courts for a proper interpretation of the laws.

In the United States district courts in the states, a court is required to be held in one place in the state, in some states two places, and in some as may as four places, but only one court is held at a time, and its jurisdiction is confined solely to federal matters, while in Oklahoma, there are seven district courts in session at once at seven different and separate places. Each district court must sit in from three to seven counties twice each year. Each term of court in a county is a district court with all the jurisdiction, federal, territorial, civil, criminal, law, chancery, bankruptcy and appellate, combined

and concurrent, administered by one judge and attended by one clerk. The clerk must have an office and a deputy in each county of his district, and must travel with the court "around" the circuit," attend all the courts in his district, and at the same time maintain an office force in each county sufficient to transact all public business. This condition entails additional expense without increasing the emoluments. These conditions were presented to the committee in congress with a request for legislative relief for the clerks in the territories. In response to this appeal congress passed the provision contained in the act of July 1, 1898, which was intended for the purpose of increasing rather than diminishing the emoluments of clerks in the territories. But even if this were not true, there is nothing in the language of the act itself which will warrant the construction contended for by counsel for the government.

The United States congress, which body has control of the disposition of the revenues belonging to the United States, have plainly and expressly declared that a clerk of the district court in Oklahoma shall be allowed "five dollars per day for his attendance on the court while actually in session," and this law has never been repealed, amended or modified by any prior or subsequent legislation. It has been the policy of the United States to pay as much of the expense of civil government in the territories as is consistent with good government. The superior government pays the governor, the secretary, the members of the legislature and its officers, rent, fuel, light and public printing. It provides the courts, furnishes and pays the judges, United States attorney, United States marshal and clerks of the supreme and district courts. This wise and benefi-

cient policy should not be overthrown and thus cripple the
offspring of the national government and render its courts
less efficient by a refusal to provide a clerk for the court at
all times when in session.

The agreed statement of facts showed that Warren had
attended upon the session of the district court for each day he
claimed compensation, that court was actually in session and
business was actually transacted. Upon this state of facts, the
comptroller was in error in disallowing any portion of his per
diem, and in charging it back against him to be refunded.
The United States at the time suit was instituted, was indebt-
ed to him in a much larger sum than it was attempting to re-
cover. There is no state of the law, upon the facts as sub-
mitted, under which either Warren or his sureties are liable to
the United States for any sum whatever, and there was no er-
ror in the court finding against the plaintiff below.

The next question presented by the record seems to be
settled in favor of the plaintiff in error. The court in this case
had no power to render a judgment against the United States.
There was a period when such proceeding might have been
sustained. The act of March 3, 1887, 24 Stat. 503, conferred
upon the district courts concurrent jurisdiction with the court
of claims in all claims against the United States where the
amount claimed did not exceed one thousand dollars, and had
this action been brought by the United States while such pro-
vision was in force, we see no reason why the district court
would not have had jurisdiction to render judgment against
the United States on Warren's cross-petition in this case. But
this statute was amended by the act of June 27, 1898, 30 Stat.
294, so as to take from the district courts jurisdiction of all

"cases brought to recover fees, salary or compensation for official services of officers of the United States."

Warren's claim for services came within this class of cases and the district court of Canadian county, having no jurisdiction to hear and determine his claim for services as clerk of said court, could not render a judgment against the United States on the set-off or counter claim.

This question was before the supreme court of the United States in *DeGroot v. United States,* 5 Wall. 419, on appeal from the court of claims, and Mr. Justice Miller, speaking for the court, said:

"The government of the United States cannot be sued for a claim or demand against it without its consent. This rule is carried so far by this court that it has been held that when the United States is the plaintiff in one of the federal courts, and the defendant has pleaded a set-off which the acts of congress have authorized him to rely on, no judgment can be rendered against the government, although it may be judicially ascertained that on striking a balance of just demands the government is indebted to the defendant in an ascertained amount. And if the United States shall sue an individual in any of her courts, and fail to establish a claim, no judgment can be rendered for the costs expended by the defendant in his defense."

It was said in *Reeside v. Walker,* 11 Howard, 272:

"To permit a demand in set-off against the government to be proceeded on to judgment against it would be equivalent to the permission of a suit to be prosecuted against it. And however this may be tolerated between individuals by a species of reconvention when demands in set-off are sought to be recovered, it could not be as against the government, except by a mere evasion and must be as useless in the end as it would be derogatory to judicial fairness."

In the case of *United States v. Robeson,* 9 Peters, 324, in discussing the rule as to set-off, it is said:

"This is a question which arises exclusively under the acts of congress, and no local law or usage can have any influence upon it. The rule as to set-off in such cases must be uniform in the different states, for it constitutes the law of courts of the United States in a matter which relates to the federal government."

The principles announced in these cases are reaffirmed in the case of *United States v. Eckford,* 6 Wallace, 484.

While it is the settled doctrine of the highest judicial authority in our land that judgment cannot be rendered against the United States on a set-off or cross demand, it is also the settled doctrine of that court that "when the United States institute a suit they waive their exemption so far as to allow a presentation by the defendant of set-offs legal and equitable to the extent of the demand made or property claimed, * * * *. They then stand in such proceeding with reference to the rights of defendants or claimants precisely as private suitors, except that they are exempt from costs and from affirmative relief against them beyond the demand or property in controversy." (*The Siren,* 7 Wallace, 152; *United States v. Ringgold,* 8 Pet. 130; *United States v. McDaniels,* 7 Pet. 16.)

In the case of *Schaumburg v. United States,* Mr. Chief Justice Waite, delivering the opinion of the court, stated the rule thus:

"Claims for credit can be used in suits against persons indebted to the United States to reduce or extinguish the debt, but not as the foundation of a judgment against the government."

The United States v. Warren.

The district court evidently found in the case at bar that Warren was not indebted to the United States in any sum, and this was correct as shown by the agreed statement of facts, as we view the law. Hence, if there was in fact nothing due from Warren to the United States, then there was no basis for a set-off and the court erred in its judgment.

As we view the law of this case, Warren was entitled to all the sums claimed by him as per diems for attendance on the court, both the sums allowed and disallowed, as well as the sums charged back to him by the comptroller and the amount for which the court rendered judgment is the correct sum which the United States owes Warren for his services as clerk, and for which in the court of claims in a proper action against the United States, he would be entitled to a judgment. But the error of the district court was in giving him an affirmative judgment.

For the reasons herein stated, the judgment of the district court is reversed, and the cause remanded with directions to render a judgment that the United States take nothing by its action.

We have reviewed the questions presented by the record in this case as fully as the information at our command will permit. We have not been aided by brief or argument for the defendant in error, and aside from the light furnished by the brief filed by counsel for the United States, have had to make our own research.

The defendant in error will pay the costs in this court.

Irwin, J., who presided in the court below, not sitting; Beauchamp, J., absent; all the other Justices concurring.